UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

SYLWIA EWELINA MADEJ MANCHANDA
and RAHUL D. MANCHANDA,

                Plaintiffs,

    -v-

ANDREA LEWIS, Immigration Services,
SUSAN QUINTANA, New York USCIS Field
Office Director, and UNITED STATES
CITIZENSHIP IMMIGRATION SERVICES,

              Defendants.

-------------------------------------------------------------- X

Case No. 20 Civ. 1773 (GBD) (RWL)


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS USCIS AND
ANDREA LEWIS TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**


AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2800
Fax: (212) 637-2370
E-mail: ilan.stein@usdoj.gov


ILAN STEIN
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ..................................................................................................3

ARGUMENT ......................................................................................................5

I.     Legal Standard ..........................................................................................5

II.    Plaintiffs' FTCA Claim Should Be Dismissed .......................................................6

       a.   Plaintiffs Failed to Exhaust Their Administrative Remedies ............................6

       b.   Plaintiffs Fail to State a Claim for Abuse of Process....................................8

III.   Plaintiffs' *Bivens* Claim Should Be Dismissed........................................................9

       a.   The Court Should Not Extend the *Bivens* Remedy to This
            New Context ................................................................................10

       b.   Plaintiffs' *Bivens* Claim Against Officer Lewis Fails to State a
            Claim Upon Which Relief Could Be Granted .................................................15

IV.    Plaintiffs' APA Claims Should Be Dismissed.......................................................18

V.     Plaintiffs' Section 1983 Claim Should Be Dismissed ............................................20

VI.    Plaintiffs' Section 2000ee-1(e) Claim Should Be Dismissed ..............................21

CONCLUSION.....................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adeleke v. United States*,
150 F.3d 144, 153 (2d Cir. 2004)........................................................................... 8

*Air Espana v. Brien*,
165 F.3d 148  (2d Cir. 1999)................................................................................. 19

*Alvarez v. Rosa*,
2012 WL 651630 (S.D.N.Y. Feb. 28, 2012)....................................................17-18

*Ashcroft v. Iqbal*,
555 U.S. 662 (2009).............................................................................. 6, 10, 16

*Bennet v. Spear*,
520 U.S. 154 (1997)........................................................................................... 18

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971)................................................................................. passim

*Bush v. Lucas*,
462 U.S. 367 (1983).......................................................................................... 13

*Carlson v. Green*,
446 U.S. 14 (1980)................................................................................. 10, 11, 13

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)................................................................................... 5

*Celestine v. Mt. Vernon Neighborhood Health Ctr.*,
403 F.3d 76 (2d Cir. 2005)................................................................................... 6

*Davis v. Passman*,
442 U.S. 228 (1979).................................................................................. 9, 10,11

*DeMartino v. New York*,
2013 WL 3226789 (E.D.N.Y. June 24, 2013) ....................................................... 20

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988).......................................................................................... 14

*Diaz v. Mercurio*,
2020 WL 1082482 (S.D.N.Y. March 5, 2020) ....................................................... 13

*DiFolco v. MSNBC Cable LLC*,
622 F.3d 104 (2d Cir. 2010)................................................................................. 7

*El Badrawi v. Dep't of Homeland Security*,
579 F. Supp. 2d 249 (D. Conn. 2008)................................................................. 14

*Estelle v. Gamble*,
429 U.S. 97 (1976)............................................................................................. 1

*Families for Freedom v. Napolitano*,
628 F. Supp. 2d 535 (S.D.N.Y. 2009)................................................................. 20

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)................................................................................. 6

*Glaser v. Kaplan*,
  170 N.Y.S.2d 522 (2d Dep't 1958)..................................................................... 8

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952)......................................................................................... 14

*Hayden v. County of Nassau*,
  180 F.3d 42 (2d Cir. 1999)............................................................................... 16

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020)....................................................................................... 10

*Huarcaya v. Mukasey*,
  550 F.3d 224 (2d Cir. 2008).........................................................................19-20

*In re Agent Orange Prod. Liab. Litig.*,
  818 F.2d 210 (2d Cir. 1987)............................................................................... 7

*Jesner v. Arab Bank, PLC*,
  138 S. Ct. 1386 (2018)..................................................................................... 22

*Johnson v. The Smithsonian Institution*,
  189 F.3d 180 (2d Cir. 1999)............................................................................... 6

*Keiler v. Harlequin Enters. Ltd.*,
  751 F.3d 64 (2d Cir. 2014)................................................................................. 5

*Kingsley v. Bureau of Prisons*,
  937 F.2d 26 (2d Cir. 1991)............................................................................... 20

*Kwai Fun Wong v. United States*,
  373 F.3d 952 (9th Cir. 2004) ........................................................................... 16

*Leeds v. Meltz*,
  85 F.3d 51 (2d Cir. 1996)................................................................................. 16

*Lyons v. Litton Loan Servicing LP*,
  158 F. Supp. 3d 211 (S.D.N.Y. 2016)................................................................. 5

*Mahon v. Johnson*,
  321 F. Supp. 3d 320 (E.D.N.Y. 2018) ............................................................. 15

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)............................................................................... 5

*Martinez v. D'Agata*,
  2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) ................................................. 12

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)......................................................................................... 15

*McNeil v. United States*,
  508 U.S. 106 (1993).......................................................................................7-8

*Nationwide Mut. Ins. Co. v. Morning Bus Co.*,
  2011 WL 381612 (E.D.N.Y. Feb. 2, 2011)...................................................16-17

*Oliveras v. Basile*,
  440 F. Supp. 3d 365 (S.D.N.Y. 2020)..........................................................12, 13

*Ragbir v. Lynch*
  640 F. App'x 105 (2d Cir. 2016) ..................................................................15-16

*Rivera v. United States*,
  928 F.2d 592 (2d Cir. 1991)............................................................................... 9

*Sanford v. Bruno*,
  2018 WL 2198759 (E.D.N.Y. May 14, 2018) ........................................................ 12
*Savino v. City of New York*,
  331 F.3d 63 (2d Cir. 2003) ...................................................................................... 8
*Sharkey v. Quarantillo*,
  541 F.3d 75 (2d Cir. 2008) .................................................................................... 18
*Singh v. Mukasey*,
  263 F. App'x 161 (2d Cir. 2008) ........................................................................... 15
*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) .................................................................................... 6
*Tracy v. Freshwater*,
  623 F.3d 90 (2d Cir. 2010) ...................................................................................... 1
*Turkmen v. Ashcroft*,
  2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018) .................................................... 12
*Vailette v. Lindsay*,
  2014 WL 4101513 (E.D.N.Y. Aug. 18, 2014) ...................................................... 7
*Walia v. Holder*,
  59 F. Supp. 3d 492 (E.D.N.Y. 2014) ................................................................. 8-9
*Wallace v. Gonzales*,
  463 F.3d 135 (2d Cir. 2006) .................................................................................. 15
*Williams v. Williams*,
  298 N.Y.2d 592 (1969) ............................................................................................ 8
*Williams v. Young*,
  769 F. Supp. 2d 594 (S.D.N.Y. 2011) .................................................................... 8
*Zhao v. Chertoff*,
  2009 WL 700709 (E.D.N.Y. Mar. 15, 2009) ...................................................... 16
*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ................................................................................... passim

**Statutes**

5 U.S.C. ch. 5 ................................................................................................................ 1
5 U.S.C. § 701(a) ......................................................................................................... 18
5 U.S.C. § 702 ............................................................................................................. 18
5 U.S.C. § 704 ........................................................................................................ 2, 18
28 U.S.C. § 1346 ........................................................................................................... 1
28 U.S.C. § 2675(a) ................................................................................................... 6, 8
42 U.S.C. § 1983 ..................................................................................................... 2, 21
42 U.S.C. § 2000ee-1 ................................................................................................. 21
42 U.S.C. § 2000ee-1(a) ............................................................................................ 21
42 U.S.C. § 2000ee-1(e) ..................................................................................... 2, 21, 22

**Regulations**

8 C.F.R. § 14.2 ........................................................................................................... 6, 7

Defendants Andrea Lewis ("Officer Lewis") and the United States Citizenship and Immigration Services ("USCIS," and together with Officer Lewis, "Defendants"),[1] by their attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Amended Complaint ("Complaint" or "Compl.") (Dkt. No. 32) as against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs Sylwia Ewelina Madej Manchanda ("Madej"), a non-citizen of the United States, and Rahul D. Manchanda,[2] a U.S. citizen, allege in this action that they were subject to discriminatory and harassing conduct by USCIS officers during a routine interview on February 13, 2020, in connection with Plaintiffs' application to adjust Madej's status based on Plaintiffs' alleged marriage.  Specifically, they allege that Officer Lewis, who conducted Plaintiffs' adjustment-of-status interview, made inappropriate comments, asked improper questions, and declined to adjust Madej's status to that of lawful permanent resident.  They further allege that Officer Lewis and her colleagues retaliated against them because they filed a complaint against Officer Lewis on February 13, 2020.  Plaintiffs advance claims under the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"); the Administrative Procedure Act, 5 U.S.C. ch. 5 ("APA"); 42

---

[1] Plaintiffs also named USCIS Field Director Susan Quintana as a defendant in this action.  This Office has yet to obtain representation authority for Director Quintana, and therefore file this motion solely on behalf of Officer Lewis and USCIS.  Because the claims against Director Quintana are not materially different from plaintiffs' other claims, *sua sponte* dismissal may be appropriate.

[2] Plaintiffs bring this case *pro se*.  Although courts are ordinarily obligated to afford a special solicitude to *pro se* litigants, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), "a lawyer representing himself ordinarily receives no such solicitude at all," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).  Because Mr. Manchanda is an immigration attorney, Plaintiffs should not be accorded any special solicitude on account of their *pro se* status.

U.S.C. § 1983; 42 U.S.C. § 2000ee-1(e); and, against Officer Lewis, a claim pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Each of Plaintiffs' claims against Defendants should be dismissed.

Plaintiffs' FTCA claim should be dismissed under Rules 12(b)(1) and 12(b)(6).  To begin with, this Court lacks subject matter jurisdiction over the FTCA claim because Plaintiffs failed to exhaust their administrative remedies insofar as they filed an agency claim only after filing the instant action, and the agency has not issued a final decision.  Even if Plaintiffs had exhausted their administrative remedies, their FTCA claim would still fail because Plaintiffs failed adequately to allege the elements of the underlying tort, abuse of process.

Plaintiffs' *Bivens* claim should similarly be dismissed.  The Supreme Court explained in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1847 (2017), that "expanding the *Bivens* remedy is now a disfavored judicial activity" that courts should be very hesitant to undertake.  This case is markedly different from previous *Bivens* cases decided by the Supreme Court, and there are sound reasons for the Court to hesitate before expanding the *Bivens* remedy to this new context, including separation-of-powers concerns regarding interference with the Executive's execution of immigration and foreign policy, and the fact that alternative remedial schemes exist.  The Court should decline to expand the *Bivens* remedy to this new context on account of these factors.

Plaintiffs' next claim, advanced under the APA, should be dismissed for two primary reasons.  First, review under the APA is limited to "final agency action[s]."  5 U.S.C. § 704.  Here, there has been no such action:  The agency has not finally adjudicated Plaintiffs' adjustment-of-status request.  In fact, the agency is actively seeking to resolve Plaintiffs' request, as evidenced by the agency's issuance of a *Stokes* interview notice and conduct of an interview.

Second, even if there were a final agency action, Plaintiffs have failed adequately to allege that the challenged action—the issuance of a Stokes interview notice—was arbitrary and capricious.

Finally, this Court should dismiss Plaintiffs' section 1983 and section 2000ee-1(e) claims. It is well established that section 1983 does not apply in actions against the federal government or its officers for their federal-capacity conduct. And Plaintiffs' section 2000ee-1(e) claim fails because (1) the statutory provision does not create a private right of action, and (2) Plaintiffs have not alleged that they filed a complaint relating to the federal government's anti-terrorism efforts.

## BACKGROUND

This case arises in connection with an adjustment-of-status interview on February 13, 2020, for Sylwia Madej Manchanda, a native of Poland. (Compl. ¶¶ 33-35.) Madej sought to become a permanent resident of the United States on the basis of her purported marriage to Mr. Manchanda. (*Id.* ¶ 34.) Plaintiffs allege that they arrived at the Department of Homeland Security's New York Field Office—where they were summoned to be interviewed—at approximately 1:42 p.m., in advance of their scheduled interview at 2:00 p.m. (*Id.* ¶¶ 35-36.) According to Plaintiffs, they were forced to wait until 4:30 p.m. for their change of status interview and were "the last persons to be interviewed even though they arrived very early." (*Id.* ¶ 37.) They allege that, while they waited, "various DHS/USCIS Officers floated around [them], snickering behind their backs and making negative comments about both [Plaintiffs]." (*Id.* ¶ 38.)

The change-of-status interview was conducted by Officer Lewis. (*Id.* ¶ 39.) During the interview, Officer Lewis allegedly "made subtle racist comments to Mr. Manchanda, an Indian-American, and Madej, who is white," and "insinuated" that Madej "was a 'prostitute' and that [Mr.] Manchanda . . . married her for fraudulent purposes." (*Id.* ¶¶ 40-41.) Officer Lewis also allegedly "questioned the 'bona fides' of Plaintiffs' marriage, mocked [Mr.] Manchanda's

profession," "constantly referred to [Mr.] Manchanda's ex-wife, Sharie Kruzic," and "humiliated . . . Madej asking her 'how much does [Mr.] Manchanda pay his ex-wife in child support,' 'when was the last time [Mr.] Manchanda saw his kids,' 'how often does he see the kids,'…and other unwarranted comments."   (*Id.* ¶¶ 42-43.)  Although "Plaintiffs provided [Officer Lewis] with all of the statutorily required documents…, [Officer Lewis] continued to insult, harass, and mock the Plaintiffs."  (*Id.* ¶¶ 44-45.)

Plaintiffs filed a complaint against Officer Lewis later that evening, and requested an investigation "with the civil rights divisions of the U.S. Department of Justice and Department of Homeland Security."  (*Id.* ¶ 51.)  They allege that, in retaliation to their complaint, Officer Lewis "continued to engage in severe, relentless, and ongoing reprisals and retaliation."  (*Id.* ¶ 53.)  Mr. Manchanda allegedly "began receiving weird client inquiry [communications]…from a purported 'DHS/USCIS federal employee'" and were subjected to "ongoing terrorism and harassment."  (*Id.* ¶¶ 54, 56.)

On February 27, 2020, Madej received notice to appear for a Stokes interview.  (*Id.* ¶ 51.)  Plaintiffs allege that the Stokes interview notice was mailed on February 18, 2020, but was "fraudulently 'post-dated' as of February 14, 2020, the day after the formal complaint against [Officer Lewis]."  (*Id.* ¶¶ 58-59.)  They further allege that Officer Lewis sent the notice to Plaintiffs' old address "with an intent to get the notice lost so that Madej would miss the interview."[3]  (*Id.* ¶ 62.)  Plaintiffs then filed a second complaint against Officer Lewis, after which, they claim, USCIS Field Office Director Susan Quintana began to "deny every single case that [Mr.] Manchanda file[d] on behalf of his private immigration clients."  (*Id.* ¶ 64.)

On February 28, 2020, Madej filed a Complaint in this Court against Officer Lewis,

---

[3] Plaintiffs do not dispute that they ultimately received the Stokes interview notice.

advancing claims under section 1983 and section 2000ee-1(e).[4]  (Dkt. No. 1.)  On June 15, 2020,

Madej and Mr. Manchanda filed an Amended Complaint, adding FTCA, APA, and *Bivens*

claims.  (Dkt. No. 32.)  On June 23, 2020, Defendants filed a letter requesting a pre-motion

conference.  (Dkt. No. 35.)  On June 30, 2020, the Court declined to schedule a pre-motion

conference, and granted Defendants leave to file this motion.  (Dkt. No. 37.)

## ARGUMENT

### I.    LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Lyons v.*

*Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  To resolve a Rule 12(b)(1) motion, a district

court must "determine whether [the complaint and its exhibits] allege[] facts" sufficient to

establish subject matter jurisdiction.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d

Cir. 2016) (quotation marks omitted).  "When the Rule 12(b)(1) motion is facial, based solely on

the allegations of the complaint or the complaint exhibits attached to it, . . .  the court must

accept as true the complaint's factual allegations and "draw[] all reasonable inferences in favor

of the plaintiff."  *Id.* at 57 (quotation marks omitted).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient

facts which, taken as true, state a plausible claim for relief."  *Keiler v. Harlequin Enters. Ltd.*,

751 F.3d 64, 68 (2d Cir. 2014).  A claim has "facial plausibility" when the "factual content" of

the complaint "allows the court to draw the reasonable inference that the defendant is liable for

_____

[4] Although not alleged in the Complaint, Plaintiffs filed an administrative claim on Form 95 to
the U.S. Department of Homeland Security one week later, on March 6, 2020.  (Dkt. No. 36-1.)

the misconduct alleged." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).

Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *First*

*Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (citation and internal

quotation marks omitted).  Further, "[w]here a complaint pleads facts that are merely consistent

with a defendant's liability, it stops short of the line between possibility and plausibility of

entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal

quotation marks omitted).

## II.    PLAINTIFFS' FTCA CLAIM SHOULD BE DISMISSED

Plaintiffs' FTCA claim should be dismissed for either of two reasons: first, Plaintiffs

failed to exhaust their administrative remedies, and second, Plaintiffs have failed adequately to

allege the elements of the underlying tort, abuse of process.

### a.    Plaintiffs Failed to Exhaust Their Administrative Remedies

"The FTCA requires that a claimant exhaust all administrative remedies before filing a

complaint in federal district court.  This requirement is jurisdictional and cannot be waived."

*Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citations

omitted).  "A formal claim is not filed for purposes of [the FTCA] until a Federal agency

receives from a claimant written notification of an incident 'accompanied by a claim for money

damages in a sum certain for injury to or loss of property.'" *Johnson v. The Smithsonian*

*Institution*, 189 F.3d 180, 190 (2d Cir. 1999) (citing 28 C.F.R. § 14.2(a)).  Before a plaintiff files

suit, he "shall have first presented the claim to the appropriate Federal agency and his claim shall

have been finally denied by the agency in writing and sent by certified or registered mail."  28

U.S.C. § 2675(a).  The agency is deemed to have denied a claim if it fails to act on it within six

months of receipt.  28 U.S.C. § 2675(a).  "The burden is on the Plaintiff to both plead and prove

compliance with the [FTCA's] statutory requirements."  *Vailette v. Lindsay*, No. 11 Civ. 3610 (NGG) (RLM), 2014 WL 4101513, at *5 (E.D.N.Y. Aug. 18, 2014) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)).

Plaintiffs do not adequately allege that they exhausted their administrative remedies. First, Plaintiffs do not allege that they filed a claim with any Federal agency for "money damages in a sum certain."  8 C.F.R. § 14.2.  To be sure, Plaintiffs allege that, on February 13, 2020, they "filed a formal complaint and request for an investigation with the civil rights divisions of the U.S. Department of Justice and Department of Homeland Security into the abusive behavior by [Officer] Lewis."  (Compl. ¶ 51.)  They further allege that they filed a second complaint against Officer Lewis and some of her colleagues.  (Compl. ¶ 64.)  Yet Plaintiffs do not allege that those complaints sought "money damages in a sum certain," as required under 8 C.F.R. § 14.2.  Nowhere do Plaintiffs allege that they filed a "claim" that might satisfy the requirement that they exhaust their administrative remedies.

In a letter to the Court dated June 29, 2020, Plaintiffs asserted that they filed a Form 95 with DHS on March 6, 2020, which they attached to their letter.  (Dkt. No. 36.)  As a formal matter, the Court should not consider this in deciding this motion to dismiss.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a [Rule 12(b)(6)] motion to dismiss…, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  Moreover, even if the Court were to consider the information in Plaintiffs' March 6 letter, it should still conclude that Plaintiffs failed to exhaust their administrative remedies insofar as the Form 95 was filed *after* Plaintiffs commenced the instant action.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until

they have exhausted their administrative remedies."); 28 U.S.C. § 2675(a) ("An action shall not

be instituted [under the FTCA] unless the claimant shall have first presented the claim to the

appropriate Federal agency and his claim shall have been finally denied by the agency in

writing[.]").  Here, Plaintiffs did not file their administrative claim before commencing litigation,

and they have not alleged that the agency issued a final decision with respect to their claim.  (*See*

Compl.)  This Court therefore lacks subject matter jurisdiction over their claim.  *See, e.g.*,

*Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004) (concluding that appellant had failed

to exhaust administrative remedies and that the court therefore lacked jurisdiction because

claimant did not receive a final administrative disposition before filing suit).

      b.    <u>Plaintiffs Fail to State a Claim for Abuse of Process</u>

Plaintiffs' FTCA claim also should be dismissed for the independent reason that they

have failed to state a claim for abuse of process.  Under New York law, such a claim requires a

plaintiff to allege that the defendant "(1) employ[ed] regularly issued legal process to compel

performance or forbearance of some act; (2) with intent to do harm without excuse or

justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of

process.'"  *Williams v. Young*, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011) (quoting *Savino v. City

of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

To state a claim for abuse of process, the plaintiff must allege that the defendant initiated

a legal process against her.  "Process is a direction or demand that the person to whom it is

directed shall perform or refrain from the doing of some described act."  *Williams v. Williams*,

298 N.Y.2d 592, 596 (1969).  New York courts have held that "process" must be "issued by or

filed in a court."  *Glaser v. Kaplan*, 170 N.Y.S.2d 522, 525 (2d Dep't 1958); *see also Walia v.

Holder*, 59 F. Supp. 3d 492, 512 (E.D.N.Y. 2014) (concluding that plaintiff failed to advance a

viable abuse of process claim because he did not allege that defendants "obtained any *court issued process*"). Here, the only party that initiated any process at all are Plaintiffs. Defendants never initiated a process against Plaintiffs, much less one in court.

Finally, Plaintiffs' claim fails because they have not sued the United States, which is "[t]he only proper federal institutional defendant in [an FTCA] action." *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991).

For each of these reasons, Plaintiffs' FTCA claim should be dismissed.

## III.    PLAINTIFFS' *BIVENS* CLAIM SHOULD BE DISMISSED

### a.    The Court Should Not Extend the *Bivens* Remedy to This New Context

The Court should decline to extend *Bivens* to reach the allegations of the Complaint, which assert a claim for due process violations in connection with an adjustment-of-status interview. (Compl. ¶ 73.) In *Bivens*, the Supreme Court recognized "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures," even though Congress had never provided such a remedy for plaintiffs whose rights allegedly had been violated by federal agents. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In creating a direct cause of action for damages against federal officers, the *Bivens* Court explained that "Congress had not foreclosed a damages remedy in 'explicit' terms and . . . no 'special factors' suggested that the Judiciary should 'hesitat[e]' in the face of congressional silence." *Id.* (quoting *Bivens*, 403 U.S. at 396-97). Since then, the Supreme Court has "recognized what has come to be called an implied cause of action in two cases involving other constitutional violations." *Abbasi*, 137 S. Ct. at 1854. In the first, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court held that the plaintiff, who alleged that she was wrongfully fired by her employer based on her gender, had an implied right of action under the Fifth

Amendment.  In the second, *Carlson v. Green*, 446 U.S. 14, 19 (1980), the Court found that an inmate had an implied right of action under the Eighth Amendment for federal officers' deliberate indifference in failing to provide adequate medical treatment.  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Abbasi*, 137 S. Ct. at 1855.

For the past four decades, the Supreme Court has not recognized any new *Bivens* claims.  In *Abbasi*, the Supreme Court observed that there has been a "notable change to the Court's approach to recognizing implied causes of action," and that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).  In its most recent decision on the issue, the Court noted that "if the Court's three *Bivens* cases [had] been ... decided today,' it is doubtful that [it] would have reached the same result."  *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020).  Today, when asked to extend *Bivens*, the Court engages in a two-step inquiry:  First, it asks "whether the request involves a claim that arises in a new context or involves a new category of defendants," meaning that "it is different in a meaningful way from previous *Bivens* cases decided by this Court"; second, it asks "whether there are any special factors that counsel hesitation."  *Id.* at 743 (brackets and quotation marks omitted).

The *Bivens* claim in this case arises in a new context.  *Abbasi* characterized the three existing *Bivens* contexts as follows: "[1] a claim against FBI agents for handcuffing a man in his own home without a warrant [*Bivens*]; [2] a claim against a Congressman for firing his female secretary [*Davis*]; and [3] a claim against prison officials for failure to treat an inmate's asthma [*Carlson*]."  *Id.* at 1860.  The instant case diverges meaningfully from each.  The constitutional right at issue—here, the Plaintiffs' right to due process—is different from those at issue in *Bivens*, *Davis*, and *Carlson*.  That alone establishes the novelty of the context here.  *Abbasi*, 137

10

S. Ct. at 1860 (identifying the "the constitutional right at issue" in that case as a "meaningful" difference from those at issue in *Bivens*, *Davis*, and *Carlson*). Setting that aside, this case is also factually distinct from each of the three *Bivens* contexts: It involves allegedly harassing behavior during an adjustment-of-status interview, and alleged retaliation against Plaintiffs after they complained. That bears no similarity whatever to *Bivens* (warrantless arrest), *Davis* (employment discrimination), or *Carlson* (prisoner mistreatment).

At the second step of the inquiry, the Court evaluates whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (quotation marks omitted). In evaluating whether special factors counsel hesitation, courts "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. Courts consider "if there are reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858. In the same vein, a conclusion that judicial restraint is appropriate may be drawn from Congress's creation of a specific remedy in the relevant context:

> If there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action. For if Congress has created any alternative, existing process for protecting the injured party's interest, that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.

*Id.* Only if this analysis reveals no special factors counseling hesitation may a court create a judicial remedy "without express congressional authorization." *Id.*

Special factors counsel against a judicially-created damages remedy in this case. The Supreme Court has emphasized that "when alternative methods of relief are available, a *Bivens*

remedy usually is not." *Abbasi*, 137 S. Ct. at 1863.  Given Plaintiffs' simultaneous assertion of different theories supporting similar claims elsewhere in the Complaint, including for relief under the FTCA, it is clear that an alternative remedial scheme exists.  Multiple courts in this Circuit have correctly concluded that a plaintiff's ability to pursue her claim under the FTCA is dispositive.  *See Oliveras v. Basile*, 440 F. Supp. 3d 365, 374-76 (S.D.N.Y. 2020) (concluding that the FTCA provided an adequate alternative remedy that barred extension of the *Bivens* remedy to claims for false arrest and excessive force arising out of law enforcement's detonation of explosive devices); *Martinez v. D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (declining to extend *Bivens* remedy to failure-to-intervene claim after concluding that the FTCA provided adequate alternative remedy); *Turkmen v. Ashcroft*, No. 02 Civ. 2307 (DLI) (SMG), 2018 WL 4026734, at *11 (E.D.N.Y. Aug. 13, 2018) (concluding that "[b]ecause plaintiffs could have brought their claims under the FTCA and been awarded damages for their injuries if they prevailed, . . . their *Bivens* claims should be dismissed).

The availability of the FTCA as an alternative remedial scheme is dispositive even where, as here, a plaintiff's FTCA claim would not succeed.  *See Oliveras*, 440 F. Supp. 3d at 370 (In determining whether an alternative remedy precludes a *Bivens* claim, "it matters not whether plaintiff's alternative claims would succeed." (internal brackets and quotation marks omitted)); *Sanford v. Bruno*, No. 17 Civ. 5132 (BMC), 2018 WL 2198759, at *7 (E.D.N.Y. May 14, 2018) (concluding that the remedies that existed "to address plaintiff's situation [we]re . . . adequate for purposes of determining whether to imply a *Bivens* remedy – even though those remedies did not work in this instance").

To be sure, at least one district court in this Circuit has concluded otherwise.  *See Diaz v. Mercurio*, No. 19 Civ. 1319 (AT), 2020 WL 1082482, at *6 (S.D.N.Y. Mar. 5, 2020)

(concluding that the FTCA does not preclude plaintiff from asserting a claim under *Bivens*).

Defendants respectfully disagree with that court's analysis, including because it relies on pre-

*Abbasi* cases to conclude that "Congress views FTCA and *Bivens* as parallel, complementary

causes of action," *id.* (quoting *Carlson v. Green*, 446 U.S. 14, 20 (1980)), and that "an FTCA

claim is simply not a substitute for a *Bivens* action," *id.* (quoting *Bush v. Lucas*, 462 U.S. 367,

378 (1983)). Yet, since the cases relied on in *Diaz* were decided, the Supreme Court has made

clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S.

Ct. at 1855. And, as another district court in this Circuit recently observed, the relevant language

in *Abbasi* is significantly narrower than the language in *Carlson*. *See Oliveras*, 440 F. Supp. 3d

at 373. In *Carlson*, the Court stated that an alternative remedial scheme would preclude a *Bivens*

cause of action "when defendants show that Congress has provided an alternative remedy which

it *explicitly* declared to be a *substitute* for recovery directly under the Constitution and viewed as

equally effective." *Carlson*, 446 U.S. at 18-19. By contrast, the preclusive language in *Abbasi* is

far broader: a *Bivens* claim is precluded if Congress created "any alternative, existing process for

protecting the injured party's interest." *Abbasi*, 137 S. Ct. at 1858 (internal brackets omitted).

"This broader language fatally undermines *Carlson*'s finding that the FTCA is not an adequate

alternative remedy, because the [*Abbasi*] court has made clear that the law no longer requires an

'explicit congressional declaration that persons injured . . . may not recover money damages

from agents but must be remitted to another remedy, equally effective in the view of Congress.'"

*Oliveras*, 440 F. Supp. 3d at 373 (quoting *Carlson*, 446 U.S. at 19). "All that is required now is

the existence of an alternative remedial structure that could encompass the plaintiff's claim." *Id.*
The FTCA provides such a remedial scheme and therefore precludes Plaintiffs' *Bivens* claim.[5]

Even if an alternative remedial scheme did not exist, the Court should still decline to
extend the *Bivens* remedy to this new context insofar as it raises separation-of-powers concerns.
Whether to grant an adjustment of status, and how to conduct an adjustment-of-status interview,
implicates public policy considerations.  Implying a right of action in adjustment-of-status cases
could affect immigration decisions and, by extension, the nation's foreign policy.  *El Badrawi v.
Dep't of Homeland Security*, 579 F. Supp. 2d 249, 263 (D. Conn. 2008) ("Essentially all aspects
of the relationship between the federal government and its alien visitors are ones that will
implicate foreign relations concerns.").  It is not surprising, then, that immigration policy is "so
exclusively entrusted to the political branches of government as to be largely immune from
judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952); *see also
Dep't of Navy v. Egan*, 484 U.S. 518, 529-30 (1988) (recognizing the "generally accepted view
that foreign policy was the province and responsibility of the Executive").  In *Arar*, the Second
Circuit declined to extend the *Bivens* remedy to the extraordinary-rendition context, in part
because doing so would "unavoidably influence[] government policy…, invade[] government
interests, enmesh[] government lawyers, and thereby elicit[] government funds for settlement."
585 F.3d at 574.

If the Court were to recognize a new cause of action that those seeking adjustments of
status could bring against USCIS officers, it could affect immigration policy, implicate the

---

[5] Plaintiffs have also advanced claims under the APA and section 2000ee-1(e).  To the extent the
Court concludes that those claims are valid avenues through which to challenge USCIS officials'
conduct in connection with adjustment-of-status interviews, those claims would provide
additional avenues for relief and would further support Defendants' argument that the
availability of alternative remedies precludes Plaintiffs' *Bivens* claim.

nation's foreign relations, and "enmesh[] government lawyers." *Id.*  That is reason enough not to extend the *Bivens* remedy to this context.  *Id.* ("'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider.").

      b.     <u>Plaintiffs' *Bivens* Claim Against Officer Lewis Fails to State a Claim Upon Which Relief Could Be Granted</u>

Even if the Court were to find a *Bivens* remedy in this context, the Complaint should still be dismissed as to Officer Lewis because it does not allege a plausible due process claim. Plaintiffs allege broadly that Officer Lewis "violated [their] constitutional right to substanti[ve] and procedural due process" by "insulting, mocking, harassing, degrading [them], and insinuating [that]…Madej[,] [w]as a prostitute."  (Compl. ¶¶ 100-01.)  Although Defendants do not concede these allegations, and note that much of Plaintiffs' complaint consists of characterizations rather than actual quotations, even assuming the truth of any facts alleged, they do not state a claim of any constitutional violation.

Courts in this Circuit have held that plaintiffs have "no constitutionally protected liberty or property interest in [adjustment-of-status] proceedings' outcome."  *Mahon v. Johnson*, 321 F. Supp. 3d 320, 325 n.2 (E.D.N.Y. 2018).  As the Second Circuit has explained, "[a]djustment of status is a matter of grace, not of right, and the evaluation of such applications is left to the discretion of the Attorney General."  *Wallace v. Gonzales*, 463 F.3d 135, 137 (2d Cir. 2006). Plaintiffs' substantive due process claim fails because there is no "constitutionally protected liberty or property interest when a petitioner seeks [adjustment of status]."  *Singh v. Mukasey*, 263 F. App'x 161, 164 (2d Cir. 2008).  Nor is there a viable procedural due process claim.  *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  In *Ragbir v.*

*Lynch*, the Second Circuit explained that the plaintiff's due process claim failed because the plaintiff had "no constitutionally protected liberty or property interest in a grant of discretionary relief."  640 F. App'x 105, 108 (2d Cir. 2016); *see also Zhao v. Chertoff*, No. 07 Civ. 4576 (DLI), 2009 WL 700709, at *3 (E.D.N.Y. Mar. 15, 2009) ("There is no cognizable Fifth Amendment due process claim on adjustment proceedings or other analogous discretionary benefit hearings." (quotation marks omitted)).  The same is true of Plaintiffs' due process claim arising out of their adjustment-of-status interview.  *See, e.g.*, *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004) (dismissing foreign religious leader's due process claim, notwithstanding allegations that agency denied application for temporary parole based on discriminatory animus, on the ground that the INA "does not create any liberty interest in temporary parole that is protected by the Fifth Amendment").

    To the extent that Plaintiffs advance an equal-protection claim under the Fifth Amendment, the Court should dismiss that claim because Plaintiffs have failed to advance well-pleaded allegations that give rise to an inference of discrimination.  *See Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) (to state an equal protection claim based on racial discrimination, plaintiffs must allege "that a government actor intentionally discriminated against them on the basis of race").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.  *Iqbal*, 555 U.S. at 678.  A plaintiff's "bald assertions and conclusions of law" are not entitled to presumptions of truth.  *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).  Where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."  *Nationwide Mut. Ins. Co. v.*

16

*Morning Bus Co.*, No. 10 Civ. 1777 (ADS) (AKT), 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011).

Plaintiffs have failed to advance well-pleaded factual allegations of race discrimination. They allege that they were "the last persons" called to be interviewed "even though they arrived very early" (Compl. ¶ 37); that Officer Lewis "insinuated that Madej was a 'prostitute' and that Manchanda has married her for fraudulent purposes" (*id.* ¶ 41); that Officer Lewis "questioned the 'bona fides' of Plaintiffs' marriage [and] mocked Manchanda's profession as a leading New York City immigration lawyer" (*id.* ¶ 42); "constantly referred to Manchanda's ex-wife . . . and humiliated Plaintiff Sylvia Madej [by] asking her 'how much does Manchanda pay his ex-wife in child support'" (*id.* ¶ 43); "continued to insult, harass, and mock the Plaintiffs" (*id.* ¶ 45); and conducted an interview that "was egregious, disturbing, flippantly biased, humiliating, and abusive towards Plaintiffs" (*id.* ¶49).  Plaintiffs' sole allegations of racial animus are vague and conclusory: they assert, without factual pleadings, that Officer Lewis "acted with inherent bias, racist feelings, jealousy, arrogance, and abused her power and law" (*id.* ¶ 50), and that Officer Lewis "made subtle racist comments" (*id.* ¶ 40), though they do not identify what those "subtle racist" comments were.  Those threadbare allegations of racial animus are insufficient to give rise to an inference of discrimination.  That is particularly true insofar as Plaintiffs themselves ascribe Officer Lewis and her colleagues' conduct not to Plaintiffs' race but rather to Mr. Manchanda's status as "a famous immigration lawyer who is a conservative with a firm political stand."  (*Id.* ¶ 38.)  Plaintiffs' conclusory, contradictory allegations regarding Officer Lewis's conduct fail to state an equal protection claim.  *See, e.g.*, *Alvarez v. Rosa*, No. 11 Civ. 3818 (KBF), 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (granting motion to dismiss after

concluding that Plaintiff's conclusory allegations did not give rise to an inference of discriminatory animus)

For these reasons, Plaintiffs' *Bivens* claim should be dismissed.

## IV.   PLAINTIFFS' APA CLAIM SHOULD BE DISMISSED

Plaintiffs also advance a claim under the APA, alleging that Officer Lewis's decision to issue a *Stokes* interview notice was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  (Compl. ¶ 120.)  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The statute waives the government's sovereign immunity in actions for relief "other than money damages" against officials acting in their official capacity.  *Id.*  The cause of action provided under the APA applies, in relevant part, to "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The APA carves out exceptions in cases where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  5 U.S.C. § 701(a).

Plaintiffs' APA claim fails for two primary reasons.  *First*, Plaintiffs have not alleged any "final agency action," as they must do to state a viable claim for relief.  *See Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008) ("review under the APA is limited to review of 'final agency action'" (quoting 5 U.S.C. § 704)).  For an agency action to be "final," "two conditions must be met:  First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature.  Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennet v. Spear*, 520 U.S. 154, 177-78 (1997).  Neither condition is met here.  No agency

decision has been consummated:  Indeed, Plaintiffs' adjustment-of-status application remains pending, and the agency is actively seeking to adjudicate Plaintiffs' request, as evidenced by the *Stokes* interview notice sent to Plaintiffs.  Officer Lewis's decision to schedule a *Stokes* interview is interlocutory in nature, and has not affected or determined any of Plaintiffs' rights or obligations.  This Court therefore lacks subject matter jurisdiction over Plaintiffs' claim.  *Air Espana v. Brien*, 165 F.3d 148 152 (2d Cir. 1999) ("The APA…requirement of finality is jurisdictional.").

*Second*, Plaintiffs have failed adequately to allege that Officer Lewis's decision to issue a *Stokes* interview notice—the agency action that Plaintiffs challenge under the APA (*see* Compl. ¶ 120)[6]—was arbitrary and capricious.  Plaintiffs assert, in conclusory terms, that Officer Lewis issued the *Stokes* interview notice "just to retaliate [against] . . . and harass Plaintiffs for filing a complaint with DHS and DOJ Civil Rights Divisions."  (*Id.* ¶ 119.)  Yet Plaintiffs do not allege that Officer Lewis knew that Plaintiffs had filed a complaint at all.  Instead, their sole relevant allegation is that Officer Lewis issued the *Stokes* interview notice after they filed a complaint against Officer Lewis.  (*Id.* ¶¶ 51, 57-58.)  Without more, that allegation is insufficient to establish that Officer Lewis knew about their complaint against her, much less that she issued a *Stokes* interview notice in order to retaliate against them.  This is especially so because a more plausible explanation comes from the nature of an adjustment-of-status interview, which is commonly and properly used by immigration officials to assess the bona fides of marriages that are used as the basis for immigration relief.  *See Huarcaya v. Mukasey*, 550 F.3d 224, 226 (2d

---

[6] Although Plaintiffs elsewhere allege, in conclusory terms, that Officer Lewis acted with discriminatory animus, their APA claim challenges Officer Lewis's decision to issue the Stokes interview notice on the ground that she issued the notice "to retaliate and reprise and harass Plaintiffs for filing a complaint with DHS and DOJ Civil Rights Divisions."  (Compl. ¶ 119.)

Cir. 2008).  Plaintiffs' own allegations suggest that Officer Lewis's decision was based on inquiries into the bona fides of Plaintiffs' marriage rather than in order to retaliate against Plaintiffs.  (*See id.* ¶ 43 (Officer Lewis asked Madej questions regarding Mr. Manchanda's relationship with his ex-wife and his children); *id.* ¶ 45 (Officer Lewis asked Mr. Manchanda what time his son Gabriel was born, as well as about Mr. Manchanda's whereabouts when Gabriel was born); *id.* ¶ 42 (Officer Lewis "questioned the 'bona fides' of Plaintiffs' marriage").) Plaintiffs have failed adequately to allege that Officer Lewis arbitrarily or capriciously issued the *Stokes* interview notice to retaliate against them.

Plaintiffs' APA claim should therefore be dismissed.[7]

## V.   PLAINTIFFS' SECTION 1983 CLAIM SHOULD BE DISMISSED

The Court also should dismiss Plaintiffs' section 1983 claim, which they assert to vindicate their Fifth Amendment rights.  It is well established that section 1983 does not apply to actions against the federal government or its officers acting under color of federal law.  *See Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir. 1991).  Indeed, when a section 1983 claim is brought against a federal official acting under color of federal law, courts routinely construe the claim as having been brought pursuant to *Bivens*.  *DeMartino v. New York*, No. 12 Civ. 3319 (SJF), 2013 WL 3226789, at *5 (E.D.N.Y. June 24, 2013).  Because Plaintiffs have not alleged that Officer Lewis or any of the Defendants were acting under color of state law, as

---

[7] Plaintiffs reference section 706(1) in their Complaint.  (Comp. ¶ 125.)  Although it does not appear that Plaintiffs asserted an agency-delay claim under that provision, to the extent they did, their claim would fail insofar as they have not sought a mandatory injunction, the only available relief under that provision.  *See, e.g.*, *Families for Freedom v. Napolitano*, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009).  Further, the Complaint shows that rather than delaying, USCIS is processing Plaintiffs' application by attempting to conduct a Stokes interview, which Plaintiffs are resisting.

required for a section 1983 claim to be viable, the Court should dismiss their claim.  *See* 42 U.S.C. § 1983.

## VI.    PLAINTIFFS' SECTION 2000ee-1(e) CLAIM SHOULD BE DISMISSED

Finally, Plaintiffs advance a claim under 42 U.S.C. § 2000ee-1(e), a provision of the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA") that modified many aspects of federal intelligence and terrorism-prevention policy.  The IRTPA established the Privacy and Civil Liberties Oversight Board as a federal agency that is required to review proposed laws, regulations, and executive branch policies to ensure that privacy and civil liberties are "appropriately considered," that "there are adequate guidelines and oversight to properly confine the use of the power," and "that the need for the power…is balanced with the need to protect privacy and civil liberties."  42 U.S.C. § 2000ee-1(a).  The IRTPA also required privacy or civil liberties officers at various agencies to perform functions similar to those of the Privacy and Civil Liberties Oversight Board.  *Id.* § 2000ee-1(b).  Section 2000ee-1(e), under which Plaintiffs advance their claim, prohibits agencies from retaliating against those who file complaints or disclose information to privacy or civil liberties officers, or to the Privacy and Civil Liberties Board, regarding "possible violation[s] of privacy protections or civil liberties in the administration of the programs and operations of the Federal Government relating to efforts to protect the Nation from terrorism."  *Id.* § 2000ee-1(e).

Plaintiffs' claim fails for either of two reasons.  *First*, section 2000ee-1 does not create a private right of action.  Nothing in the statutory provision suggests that individuals have legal or procedural remedies for any violations, *see* 42 U.S.C. § 2000ee-1, and this Court should decline to imply a private right of action because there is nothing to suggest that Congress intended to create a private remedy.  As the Supreme Court has explained, "[t]he Court's recent precedents

cast doubt on the authority of courts to extend or create private causes of action even in the realm of domestic law, where this Court has recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018). "[T]he Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857. To date, no court has created a private right of action under section 2000ee-1(e). This Court should not become the first to do so.

*Second*, even if there were a private right of action, Plaintiffs' claim would still fail because they have not alleged that they filed a complaint "that indicates a possible violation of privacy protections or civil liberties in the administration of programs . . . relating to the efforts to protect the Nation from terrorism." 42 U.S.C. § 2000ee-1(e). Plaintiffs do not allege, as they would have to do if a private right of action existed, that they filed a complaint "relating to the efforts to protect the Nation from terrorism." *Id.* § 2000ee-1(e). Rather, their complaint to DHS and the Department of Justice concerned Officer Lewis and her colleagues' allegedly "abusive[,] racist[,] disrespectful behavior and treatment [of Madej and Mr. Manchanda]." (Compl. Ex. A.) That is not the type of complaint to which section 2000ee-1(e) applies.

Plaintiffs' section 2000ee-1(e) claim therefore fails.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint against Defendants USCIS and Officer Lewis.

Dated:   July 31, 2020
         New York, New York

                              Respectfully submitted,

                              AUDREY STRAUSS
                              Acting United States Attorney for the
                              Southern District of New York
                              *Attorney for Defendants*

                     By:      /s/ Ilan Stein
                              _____

                              ILAN STEIN
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.:  (212) 637-2800
                              Fax:  (212) 637-2730
                              E-mail: ilan.stein@usdoj.gov