UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAHUL D. MANCHANDA and                       :
SYLWIA EWELINA MADEJ MANCHANDA,              :
                                             :
                        Plaintiffs,          :
                                             :
        - against -                          :
                                             :
ANDREA LEWIS, SUSAN QUINTANA,                :
U.S. CITIZENSHIP AND IMMIGRATION             :
SERVICES, and DOES 1-5,                      :
                                             :
                        Defendants.          :
------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/23/2021
```

20-CV-1773 (GBD) (RWL)

**REPORT AND RECOMMENDATION
TO HON. GEORGE B. DANIELS:
<u>MOTION TO DISMISS</u>**

**ROBERT W. LEHRBURGER**, **United States Magistrate Judge.**

Plaintiffs Rahul D. Manchanda ("Manchanda") and Sylwia Ewelina Madej Manchanda ("Madej Manchanda") bring this action to redress what they allege to be improper and retaliatory behavior by Defendants Andrea Lewis, an Immigration Services Officer; Susan Quintana, Director of the New York City Field Office, U.S. Citizenship and Immigration Services ("USCIS"); USCIS; and Does 1-5. Manchanda, an immigration attorney, proceeds pro se; Madej Manchanda is represented by her husband Manchanda. Before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that Defendants' motion to dismiss be GRANTED and the action DISMISSED.

## Factual Background

### A.   The Adjustment of Status Interview and Formal Administrative Complaint

On February 13, 2020, in connection with Madej Manchanda's application to

become a permanent resident of the United States, Plaintiffs and their infant son appeared at USCIS's New York City Field Office for a "marriage adjustment of status interview" before Lewis.   (Compl. ¶¶ 34-37.[1])   Later that day, Madej Manchanda, through Manchanda, would file a "formal complaint and request for an investigation with the civil rights divisions of the U.S. Department of Justice and Department of Homeland Security" (the "2/13 Claim").[2]  (Compl. ¶ 51.)

Plaintiffs allege they were the last to be interviewed in a room of hundreds of people – even though their interview was scheduled for 2:00 p.m., Plaintiffs had to wait until about 4:30 p.m.   (Compl. ¶¶ 35, 37.)   While Plaintiffs were waiting, "various DHS/UCSIS Officers floated around Plaintiffs, snickering," "making negative comments" about Plaintiffs, and "hinting/insinuating/indicating how they were going to screw them because Mr. Manchanda was a famous immigration lawyer who is a conservative with a firm political stand."  (Compl. ¶ 38.)  Plaintiffs claim they were subject to this mocking "while my 6 month old baby cried hysterically, we had to change his pampers in the waiting facility, and other horrific abuses."  (2/13 Claim at 2.)

After Plaintiffs finally were taken in to see Lewis for the interview, Lewis allegedly "insinuated that my beautiful Polish wife was a prostitute, that I was marrying her for

---

[1] "Compl." refers to Plaintiffs' Amended Complaint (Dkt. 32).

[2] The "2/13 Claim" describes the events from earlier that day and is attached as Exhibit A to Plaintiffs' Amended Complaint (Dkt. 32-1).  Although Plaintiffs allege that Madej Manchanda filed the 2/13 Claim through Manchanda, the content of the 2/13 Claim is self-evidently written by Manchanda himself, in the first person.  *See, e.g.*, 2/13 Claim at 2 ("I am one of the top immigration lawyers in New York City and the United States, … so I obviously know what I am doing"; referring to "my wife"; alleging that Lewis "insinuated that … I was marrying her for fraudulent purposes"), 3 ("Having practiced immigration law for nearly 20 years in New York City …, I have never seen such an … interview"; "I certainly will not accept it for me, my beautiful wife, and my beautiful baby son"; "I need redress, justice, and a remedy now").

fraudulent purposes, questioned the 'bona fides' of our marriage, and mocked my profession as a leading New York City immigration lawyer for the past 20 years who regularly appears on [various television news outlets]."  (2/13 Claim at 2.)  Lewis then asked questions of Madej Manchanda "that are really none of her business, have nothing to do with our marriage or her adjustment of status interview."  (2/13 Claim at 2.) And, although Plaintiffs provided Lewis with "a ton of documents required under the immigration laws," Lewis "basically ignored it, and instead chose to insult, harass, and mock us and our baby son, making my beautiful and decent Christian wife from Poland, tear up and cry."  (2/13 Claim at 2.)

During the interview, Lewis, who is African-American, also allegedly "made subtle racist comments to Mr. Manchanda, an Indian-American, and Madej, who is white and a Polish model," such that the interview "felt more like a Gestapo or KGB interrogation than an immigration marriage interview."  (Compl. ¶¶ 39-40; 2/13 Claim at 2.)  Indeed, Lewis "kept trying to … trip us up, trap us, and make us say something that wasn't even true."  (2/13 Claim at 2.)

Manchanda commented in the 2/13 Claim that "[t]his is what is wrong with Socialism/Communism – giving one human being with all of their inherent bias, racist feelings, jealousy, arrogance and abuse of power, abuse of law and authority to hurt and harm others"; that in his nearly twenty years of immigration law practice, he has "never seen such an ugly, egregious, disturbing, flippantly biased, humiliating, and abusive interview"; and that he would "not accept" such conduct, demanding "a remedy" and investigation.  (2/13 Claim at 3.)

**B.     The Alleged Retaliation**

Plaintiffs allege that instead of addressing the issues raised in the 2/13 Claim, Lewis (and eventually Quintana) responded with "severe, relentless, and ongoing reprisals and retaliation."  (Compl. ¶ 53.)   The Complaint describes three allegedly retaliatory events.

The first alleged event is that Manchanda "began receiving weird client inquiry/phone calls/emails/texts from a purported 'DHS/USCIS federal employee' saying that they were afraid of 'death' and 'direct energy weapons' and other such disturbing comments because they filed a complaint against another DHS/USCIS employee." (Compl. ¶ 54.)  Manchanda concedes, however, that he "is unaware if [this person] was a legitimate prospective client, or a friend of Defendant ISO Lewis, her representative or a private investigator."  (Compl. ¶ 55.)   Although Plaintiffs allegedly asked "the agencies" to investigate the communications as "reprisals in violation of federal law," no specifics are provided as to whom, when, or how they asked.  (Compl. ¶ 56.)

The second alleged retaliatory event is that Lewis mailed Plaintiffs a notice for a follow-up, "Stokes Interview" scheduled for May 2020 (the "Stokes Notice"), which Plaintiffs received on February 27, 2020.[3]  (Compl. ¶ 57.)  The Complaint alleges that the Stokes Notice "was mailed on February 18, 2020, five (5) days after [Plaintiffs'] formal complaint against Defendant ISO Lewis" but "fraudulently 'post-dated' as of February 14, 2020."  (Compl. ¶¶ 58-59.)  Plaintiffs further allege that Lewis mailed the

---

[3] "Stokes" interviews are separate interviews of a husband and wife to determine whether their marriage was bona fide or instead entered into for the purpose of evading the immigration laws.  *Dinsey v. Department of Homeland Security – United States Citizenship and Immigration Services*, No. 03-CV-10081, 2004 WL 1698630, at *1 (S.D.N.Y. July 28, 2004); *see Stokes v. United States, Immigration and Naturalization Service*, 393 F. Supp. 24, 28-33 (S.D.N.Y. 1975).

4

Stokes Notice to Plaintiffs' "old apartment address, deliberately … with an intent to get the notice lost so that Madej would miss the interview," even though Plaintiffs updated their address "online officially several times with official confirmation notices weeks/months prior," "verbally informed Defendant ISO Lewis about the change of address," and "gave Defendant ISO Lewis the official address change [ ] confirmation notices." (Compl. ¶¶ 60-62.)

The third and last alleged retaliatory event is that after a "second request to investigate the violation of federal law 42 U.S.C. § 2000ee-1(e) by Defendant ISO Lewis," Quintana "has begun to deny every single case that Manchanda files on behalf of his private immigration clients." (Compl. ¶ 64.)

### **Procedural History**

On February 28, 2020, Madej Manchanda filed the initial complaint in this action, alleging violations of 42 U.S.C. §§ 1983 and 2000ee-1(e) by Lewis. (Dkt. 1.) The case was referred to the undersigned for General Pretrial purposes and Report and Recommendation on March 5, 2020. (Dkt. 7) Six days later, Madej Manchanda amended her complaint to add a claim under the Federal Tort Claims Act. (Dkt. 10.) On April 23, 2020, the Court ordered Madej Manchanda to show cause why her complaint should not be dismissed for failure to state a claim, and for lack of subject matter jurisdiction where applicable. (Dkt. 21.) Following a show cause hearing on May 14, 2020, the Court ordered Madej Manchanda to amend her complaint or face dismissal. (Dkt. 27.) Madej Manchanda filed the operative Complaint on June 15, 2020, adding Manchanda as a plaintiff; Quintana, USCIS, and Does 1-5 as defendants; and claims for violations of due process and the Administrative Procedure Act. (Dkt.

32.)  On July 31, 2020, Defendants filed their motion to dismiss the Complaint.[4]  (Dkt. 38.)

## Legal Standards

As an initial matter, the Court notes the well-settled principle that "[a] document filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  A court must interpret such complaints "to raise the strongest arguments they suggest," the idea being that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."  *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks omitted).  That said, "a lawyer representing himself ordinarily receives no such solicitude at all."  *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

On a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it."  *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  "The plaintiff bears

---

[4] On November 12, 2020, the U.S. Attorney's Office for the Southern District of New York (then counsel for Lewis and USCIS) informed the Court that it had obtained representation authority for Quintana as of that date, and requested that the Court construe Defendants' motion to dismiss as having been filed on Quintana's behalf as well.  (Dkt. 44.)  The Court granted the request.  (Dkt. 45.)  With respect to Defendants Does 1-5, Plaintiffs have not identified or served them since filing the Complaint on June 15, 2020.  Accordingly, in the discussion that follows, the Court recommends that Plaintiffs' claims against them be dismissed without prejudice.

the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transportation System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In deciding a Rule 12(b)(1) motion to dismiss, the Court "'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Morrison*, 547 F.3d at 170 (quoting *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)).  The court also "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings").

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a cause of action, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the [non-moving party's] favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks

omitted).  This tenet, however, is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, … i.e., enough to make the claim plausible."  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted).   A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint.  *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."  *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Limited Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)).

## Discussion

The Complaint asserts five causes of action.  The first alleges violation of 42 U.S.C. § 1983 "pertaining to a civil action for deprivation of rights under the color of law

and authority by government/judicial/public official defendants." (Compl. ¶ 85.) The second alleges violation of a provision of the Intelligence Reform and Terrorism Prevention Act, 42 U.S.C. § 2000ee-1(e), "dealing with Reprisals/Retaliation for filing a bona fide legitimate complaint against federal Defendant ISO Lewis and her cohorts/cronies." (Compl. ¶ 97.) The third alleges violation of "Plaintiffs' constitutional right to substantial and procedural due process" pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Compl. ¶ 100.) The fourth alleges violation of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (the "FTCA") – specifically, "abuse of process … intended to harm the Plaintiffs without economic or social excuse or justification." (Compl. ¶ 108.) The fifth alleges violation of the Administrative Procedure Act (the "APA") for issuance of the Stokes Notice and for unreasonable delay in deciding on Plaintiffs' adjustment of status application. (Compl. ¶¶ 119-120, 122-125.) The Complaint demands actual and punitive damages "in an amount to be determined by a jury."[5] (Compl. at 29.)

Each of the Complaint's five causes of action are meritless. Plaintiffs' § 1983 claim fails because it is well established that § 1983 does not apply to actions against the federal government or its officers acting under color of federal law. Plaintiffs' § 2000ee-1(e) claim fails because § 2000ee-1 does not create a private right of action. Plaintiffs' *Bivens* claim fails because expansion of the *Bivens* remedy to this context would contravene Supreme Court precedent. Plaintiffs' FTCA claim fails because Plaintiffs did not exhaust their administrative remedies as required to bring such a claim.

---

[5] The Court refers to Plaintiffs' Prayer for Relief. For violations of 42 U.S.C. §§ 1983 and 2000ee-1(e), Plaintiffs seek $10,000,000 in actual and punitive damages – though these demands appear to be remnants from Madej Manchanda's earlier complaints. (*Compare* Compl. ¶¶ 85, 97, *with* Dkt. 11 ¶¶ 46, 48, *and* Dkt. 1 ¶¶ 42, 44.)

And Plaintiffs' APA claim fails because Plaintiffs do not allege either final agency action that this Court could review or unreasonably delayed agency action that this Court could compel.

**A.    42 U.S.C. § 1983 Does Not Apply to the Federal Government or Its Officers**

"Section 1983 authorizes private suits against any 'person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Legg v. Ulster County*, 979 F.3d 101, 116 (2d Cir. 2020) (omissions in original) (quoting 42 U.S.C. § 1983); *see O'Donoghue v. United States Social Security Administration*, 828 F. App'x 784, 787 (2d Cir. 2020) ("'To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law.'" (quoting *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014))).  "Section 1983, of course, does not apply to allegedly unlawful acts of federal officers …."  *United States v. Acosta,* 502 F.3d 54, 60 (2d Cir. 2007) (citing *Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963)); *see also Omosefunmi v. Weiss*, 198 F.3d 234 (table), 1999 WL 973516, at *1 (2d Cir. 1999) ("Actions of the Federal Government and its officers are … facially exempt from § 1983's proscriptions." (brackets omitted) (quoting *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973))).

As Plaintiffs correctly point out, a plaintiff need not use the magic words "under color of state law" in alleging unlawful state action.  (Pl. Opp. at 30.[6])  But a plaintiff still must allege state action.  Here, Plaintiffs fail to plead any facts showing that Defendants

---

[6] "Pl. Opp." refers to Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. 41).

violated their constitutional rights while acting under color of state, as opposed to federal, law.  Furthermore, the only named defendants in this case are the federal government (USCIS) and its officers (Lewis, Quintana, and Does 1-5), who are not covered by § 1983.  Indeed, none of the facts plead even vaguely suggest the involvement of state or local actors or actions.

Accordingly, Plaintiffs' § 1983 claim should be dismissed with prejudice.[7]

## B.    42 U.S.C. § 2000ee-1(e) Does Not Provide for a Private Right of Action

42 U.S.C. § 2000ee-1(e) states in relevant part:

> No action constituting a reprisal … for making a complaint … to a privacy officer or civil liberties officer ..., or to the Privacy and Civil Liberties Oversight Board, that indicates a possible violation of privacy protections or civil liberties in the administration of the programs and operations of the Federal Government relating to efforts to protect the Nation from terrorism shall be taken by any Federal employee in a position to take such action.

As Defendants argue and Plaintiffs concede, § 2000ee-1 does not explicitly provide for a private right of action.  The question is whether the Court should create or imply one.

The Supreme Court recently recognized that

> [w]ith the passage of time, … we have come to appreciate that, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress" and "[r]aising up causes of action where a statute has not created them may be a proper function for common-law

---

[7] Where a plaintiff improperly brings a § 1983 claim against a federal official acting under color of federal law, courts may and routinely do construe such a claim as a *Bivens* action.  *See Tavarez v. Reno*, 54 F.3d 109, 109-110 (2d Cir. 1995) ("Although [the plaintiff] brought the action [against federal authorities] under § 1983, the district court properly construed the complaint as an action under *Bivens* …, which requires a plaintiff to allege that a defendant acted under color of federal law to deprive plaintiff of a constitutional right."); *see also Aikman v. County of Westchester*, 691 F. Supp. 2d 496, 499 (S.D.N.Y. 2010) (collecting cases).  Here, the Court need not do so because Plaintiffs bring a separate claim under *Bivens*.  The Court discusses that claim below.

courts, but not for federal tribunals."

*Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1015 (2020) (second and third alterations in original) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)).  Indeed, "when a court recognizes an implied claim for damages on the ground that doing so furthers the 'purpose' of the law, the court risks arrogating legislative power."  *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020).  Accordingly, the Court has clarified that

> when deciding whether to recognize an implied cause of action, the determinative question is one of statutory intent. If the statute itself does not displa[y] an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. … [T]he judicial task [i]s instead limited solely to determining whether Congress intended to create the private right of action asserted.  If the statute does not itself so provide, a private cause of action will not be created through judicial mandate.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017) (first alteration in original) (internal quotation marks and citations omitted).

To begin, § 2000ee establishes the Privacy and Civil Liberties Oversight Board (the "PCLOB") "as an independent agency within the executive branch."  § 2000ee(a). The purpose of the PCLOB is to "analyze and review actions the executive branch takes to protect the Nation from terrorism, ensuring that the need for such actions is balanced with the need to protect privacy and civil liberties"; and to "ensure that liberty concerns are appropriately considered in the development and implementation of laws, regulations, and policies related to efforts to protect the Nation against terrorism." § 2000ee(c).  Section 2000ee-1, the statute at issue in this case, in turn directs the heads of certain executive branch departments, agencies, and elements to designate at

least one "senior officer" to perform functions similar to those of the PCLOB within their own department, agency, or element.[8]   § 2000ee-1(a).   Finally, §§ 2000ee-2 and 2000ee-3 address the implementation of data protection policies and procedures within federal agencies, and the obligation of federal agencies that engage in data mining to file annual reports on their practices.

Having reviewed the text and context of 42 U.S.C. § 2000ee-1, the Court finds no indication that Congress intended to create a private remedy.  Where "'[n]o provision of [a statute] explicitly provides for a private right of action for violations of [specific provisions of that statute], ... we must presume that Congress did not intend one.'"  *Doe v. Merck & Co., Inc.*, 803 F. App'x 559, 560 (2d Cir. 2020) (alterations and omission in original) (quoting *Olmsted v. Pruco Life Insurance Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir. 2002)).   Plaintiffs bear "a heavy burden ... to demonstrate otherwise." *Olmsted*, 283 F.3d at 433.

As Plaintiffs aptly observe, "[n]owhere in the statute are any powers to pursue civil or criminal actions assigned to the [PCLOB or the senior officer]"; "[t]his [ ] essentially leave[s] parties who have suffered retaliation for reporting actions of terrorism without any remedy as both the [government] and individuals could not bring an action."  (Pl. Opp. at 32.)  However, they do no more than suggest that it would be

---

[8] Specifically, the senior officer is to assist "the head ... and other officials ... in appropriately considering privacy and civil liberties concerns when ... proposing, developing, or implementing laws, regulations, policies, procedures, or guidelines related to efforts to protect the Nation against terrorism"; "periodically investigate and review ... actions, policies, procedures, guidelines, and related laws and their implementation to ensure ... adequate[ ] consider[ation] [of] privacy and civil liberties"; "ensure that [there are] adequate procedures to receive, investigate, respond to, and redress complaints from individuals who allege ... violat[ion] [of] their privacy or civil liberties"; and "periodically ... submit a report on the[ir] activities"; etc.  42 U.S.C. § 2000ee-1(a)(1)-(3), (f)(1).

"prudent" for the Court to "input [sic] a private cause of action."  (Pl. Opp. at 32.)  As such, Plaintiffs have not met their "heavy burden" to show that Congress had intended there to be one.  *See Olmsted*, 283 F.3d at 433.  And, as discussed, "If the statute itself does not 'displa[y] an intent' to create 'a private remedy,' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter.'"  *Abbasi*, 137 S. Ct. at 1856 (alteration in original) (quoting *Sandoval*, 532 U.S. at 286-87).

Because Plaintiffs' 42 U.S.C. § 2000ee-1(e) claim lacks a statutory basis, it should be dismissed with prejudice.

## C.  *Bivens* Should Not Be Extended to the Facts of This Case

*Bivens* is the "more limited … federal analog" to 42 U.S.C. § 1983.  *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).  In 1971, the Supreme Court recognized in *Bivens* an implied damages action to compensate a man who had been handcuffed in his home without a warrant by unnamed federal narcotics officers, in violation of the Fourth Amendment's prohibition against unreasonable search and seizures.  *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).  In the following decade, the Court allowed *Bivens*-type remedies twice more, in a wrongful termination-sex discrimination case brought by a congressional staffer under the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979), and in an Eighth Amendment cruel and unusual punishment case where prison officials' failure to treat an inmate's asthma led to his death, *Carlson v. Green*, 446 U.S. 14 (1980).  "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution

itself." *Abbasi*, 137 S. Ct. at 1855.

Since then, the Court has "recognized that Congress is best positioned to evaluate whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government based on constitutional torts," *Hernandez*, 140 S. Ct. at 742 (internal quotation marks omitted); "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675); "has 'consistently refused to extend *Bivens* to any new context or new category of defendants," *id.* (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 69 (2001)); and has "gone so far as to observe that if 'the Court's three *Bivens* cases [had] been … decided today,' it is doubtful that [the Court] would have reached the same result," *Hernandez*, 140 S. Ct. at 742-43 (first alteration and omission in original) (quoting *Abbasi*, 137 S. Ct. at 1856).

A court asked to extend *Bivens* must engage in a two-step inquiry. First, does the claim "arise[ ] in a 'new context' or involve[ ] a 'new category of defendants'"? *Hernandez*, 140 S. Ct. at 743 (quoting *Malesko*, 534 U.S. at 68). A court's understanding of "new context" should be "broad," and a context should be regarded as "new" if it is "'different in a meaningful way from previous *Bivens* cases decided by [the] Court.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859). If a court finds that a claim arises in a new context, the second question is, "are there any special factors [that] counse[l] hesitation" – that is, do "we have reason to pause"? *Id.* (alterations in original) (internal quotation marks omitted). "'[C]entral to [this] analysis' are 'separation-of-powers principles.'" *Id.* (second alteration in original) (quoting *Abbasi*, 137 S. Ct. at 857). A

court must "consider the risk of interfering with the authority of the other branches, and … ask whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, and whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* (internal quotation marks and citations omitted).

It is beyond dispute that Plaintiffs' claim arises in a "new context." In short, Plaintiffs allege that Lewis subjected them to mistreatment during their adjustment of status interview, and that Quintana has "den[ied] every single case that Manchanda filed on behalf of his private immigration clients" simply to retaliate against Manchanda for filing a complaint. (Compl. ¶ 92.) At the broadest level of generality, Plaintiffs claim violation of their Fifth Amendment due process rights in the context of the adjustment of status process.[9] Plaintiffs' claim thus differs meaningfully from the Court's previous *Bivens* cases: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."[10] *Abbasi*, 137 S.

---

[9] Plaintiffs allege that Quintana has been sabotaging both Manchanda's "immigration client cases" and "the immigration filings of Manchanda's clients." (Compl. ¶¶ 93, 104.) It is unclear what Manchanda means by "cases" and "filings." The Court understands Manchanda to refer to other adjustment of status applications that Manchanda has filed on behalf of other clients. The Court does not address the question whether Plaintiffs have standing to assert the rights of Manchanda's clients. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (internal quotation marks omitted)).

[10] It is of no moment that among *Bivens*, *Davis*, and *Carlson*, *Davis* also implicated the Fifth Amendment's Due Process Clause as "the Court declined to create an implied damages remedy in the following cases: … a substantive due process suit against

Ct. at 1860.

"Special factors" should also give the Court pause.  The parties spill a great deal of ink discussing whether the existence of alternative remedies forecloses *Bivens* relief here.  (*See* Def. Mem. at 11-14; Pl. Opp. at 26-28.[11])  The Court will not wade into those murky waters.[12]  Suffice it to say that the recognition of a damages remedy against immigration officials in the context of the adjustment of status process would be akin to "establish[ing] [a] whole [new] categor[y] of cases in which federal officers must defend against personal liability claims."  *Abbasi*, 137 S. Ct. at 1858.  Such sweeping action "requires an assessment of its impact on governmental operations systemwide" – a move more fitting for Congress to make.[13]  *Id.*

---

military officers; a procedural due process suit against Social Security officials; a procedural due process suit against a federal agency for wrongful termination; … [and] a due process suit against officials from the Bureau of Land Management."  *Abbasi*, 137 S. Ct. at 1857 (citing *United States v. Stanley*, 483 U.S. 669, 671-72, 683-84 (1987); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988); *FDIC v. Meyer*, 510 U.S. 471, 473-74 (1994); *Wilkie v. Robbins*, 551 U.S. 537, 547-48, 562 (2007)).

[11] "Def. Mem." refers to Defendants' Memorandum of Law in Support of their motion to dismiss (Dkt. 39).

[12] *See Oliveras v. Basile*, 440 F. Supp. 3d 365, 374-76 (S.D.N.Y. 2020) (the FTCA provided alternative remedial structure precluding *Bivens* remedy for false arrest and excessive force claims in connection with injurious detonation of explosive devices). *But see Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 710 (S.D.N.Y. 2020) ("*Bivens* and FTCA actions vindicate different wrongs" and availability of the FTCA "does not alone compel a conclusion that a remedy under *Bivens* is precluded").

[13] As another "special factor" for the Court to consider, Defendants suggest that "immigration policy is so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."  (Def. Mem. at 14 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952)).)  That may once have been the case, but recent events have confirmed the willingness of the courts to take a more active role in the just and lawful enforcement of our nation's immigration laws.  *See, e.g.*, *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1916 (2020) (rescission of Deferred Action for Childhood Arrivals program

The Court should not recognize a *Bivens* remedy based on the specific facts of this case, and Plaintiffs' *Bivens* claim should be dismissed with prejudice.

### D.    Plaintiffs Have Not Exhausted Their Administrative Remedies to Be Able to Bring an FTCA Claim

The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."   28 U.S.C. § 2674.   Congress has established an exhaustion prerequisite that a plaintiff must satisfy to validly invoke the FTCA.   Specifically, "[a]n action shall not be instituted … against the United States … unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."   28 U.S.C. § 2675(a).   "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim."   28 U.S.C. § 2675(a).

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."   *McNeil v. United States*, 508 U.S. 106, 113 (1993).   "This requirement is jurisdictional and cannot be waived."   *Celestine v. Mount Vernon Neighborhood Health Center*, 403 F.3d 76, 82 (2d Cir. 2005).   "The burden is on

---

was arbitrary and capricious as agency "failed to consider [ ] conspicuous issues," "rais[ing] doubts about whether the agency appreciated the scope of its discretion or exercised that discretion in a reasonable manner"); *New York v. United States Immigration and Customs Enforcement*, 466 F. Supp. 3d 439, 449 (S.D.N.Y. 2020) (agency's policy of conducting civil immigration arrests at New York State courthouses was "unlawful" violation of common law privilege against courthouse civil arrests; adoption of policy also was arbitrary and capricious as agency "effectively offered no rationale other than its misguided reliance on [an] Executive Order" that was "silent on the topic").

the Plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *In re Agent Orange Product Liability Litigation*, 818 F.2d 210, 214 (2d Cir. 1987).  "The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command." *McNeil*, 508 U.S. at 112.

Here, Plaintiffs ask the Court to construe the 2/13 Claim; Madej Manchanda's initial complaint, filed February 28, 2020; correspondence from Manchanda to USCIS, dated March 1, 2020; and a Standard Form 95 Claim for Damage, Injury, or Death, dated March 6, 2020, as "claims" under the FTCA.[14]  (Pl. Opp. at 15.)  The Court declines to do so as the FTCA makes clear that "the claimant shall have first presented the claim to the appropriate Federal agency" before filing suit.  28 U.S.C. § 2675(a).  Assuming for the sake of argument that the 2/13 Claim was a proper administrative claim,[15] nowhere in the Complaint or their opposition brief do Plaintiffs demonstrate that the 2/13 Claim was "finally denied by the agency," either "in writing … sent by certified or registered mail" or by "failure … to make [a] final disposition … within six months after [the claim was] filed."  28 U.S.C. § 2675(a).

---

[14] Plaintiffs claim that "[i]n this case, a Form 95 was actually even timely prepared and filed."  (Pl. Opp. at 15.)  Plaintiffs, however, are silent as to when exactly the Form 95 was filed.  The Court therefore assumes that Plaintiffs are referring to the Standard Form 95 that they filed with the Court on June 29, 2020 – that document is dated March 6, 2020.  (Dkt. 36-1.)  *See J.S. ex rel. N.S.*, 386 F.3d at 110 (a court "may consider … materials beyond the pleadings to resolve [ ] jurisdictional issue[s]").

[15] *See* 28 C.F.R. § 14.2 ("a claim shall be deemed to have been presented when a Federal agency receives from a claimant … written notification of an incident, accompanied by a claim for money damages in a sum certain for injury … alleged to have occurred by reason of the incident"); *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) ("In this Circuit, a Notice of Claim filed pursuant to the FTCA must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth.  A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims.").

At most, Plaintiffs allege that "[u]pon information, the USCIS investigated and it is understood from a DHS Civil Rights Officer 'Ms. Keels' that the investigators found against Defendant ISO Lewis and were 'taking action against her.'"[16] (Compl. ¶ 68; *see also* Pl. Opp. at 11.)  But an agency's statement that it will take action in response to a complaint is not a "final[ ] deni[al]" or "final disposition" under 28 U.S.C. § 2675(a).  *See Roberson v. Greater Hudson Valley Family Health Center, Inc.*, No. 17-CV-7325, 2018 WL 2976024, at *3 & n.2 (S.D.N.Y. June 12, 2018).  Moreover, Plaintiffs do not explain whether the purported communication was sent to them "in writing and … by certified or registered mail."  28 U.S.C. § 2675(a).

Accordingly, Plaintiffs fail to show that they exhausted their administrative remedies; the Court lacks subject matter jurisdiction to hear their FTCA claim; and the claim should be dismissed without prejudice.[17]

**E.   Plaintiffs Do Not Allege Final Agency Action Necessary for an APA Claim; Nor Do Plaintiffs Allege Unreasonably Delayed Agency Action**

The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. §§ 702, 704.  "The reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

---

[16] Further underscoring the "future action" point, Madej Manchanda filed the following email with the Court on March 26, 2020: "Hello: Miss Keels [ ] USCIS Customer Service called to say that they will be taking action against ISO Lewis and to please accept her apology on behalf of the US Government." (Dkt. 11-1.)  *See Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings").

[17] The Court therefore does not reach the questions whether the 2/13 Claim was a proper administrative claim, whether Plaintiffs adequately allege abuse of process under New York State law, and whether Plaintiffs' FTCA claim is defective because they have not named the United States as a defendant.

§ 706(2)(A).  A court's "APA review is limited to [ ] final agency action."  *Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018).  "[A]n action is 'final' if it both (1) 'mark[s] the "consummation" of the agency's decisionmaking process' and (2) is 'one by which "rights or obligations have been determined," or from which "legal consequences will flow."'"  *Smith v. Berryhill*, 139 S. Ct. 1765, 1775-76 (2019) (second alteration in original) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  "This requirement of finality is jurisdictional."  *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999); *accord Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008).

Plaintiffs allege that "[h]ere, Defendants' actions that led to the required Stokes Interview were arbitrary, capricious, and an abuse of discretion."  (Pl. Opp. at 28.)  Specifically, "Plaintiffs and their infant baby were arbitrarily made to wait for the interview for a prolonged time, [and] humiliated, intimidated, discriminated, abused, and insulted."  (Compl. ¶ 117.)  Furthermore, "Defendant ISO Lewis issued a 'Stokes Interview Notice' without any specific reason[,] just to retaliate and reprise and harass Plaintiffs for filing a complaint with DHS and DOJ Civil Rights Divisions," and "without considering the statutorily required documents and evidence."  (Compl. ¶¶ 119-120.)

Defendants argue that none of the alleged misconduct is a "final agency action" reviewable by the Court, in the sense that none represents a consummation of USCIS's decisionmaking process, none has affected, let alone determined, Plaintiffs' rights and obligations, and none has generated legal consequences for Plaintiffs.  Defendants are correct, and in opposition Plaintiffs offer no response.  Indeed, Plaintiffs seem to acknowledge that a Stokes Notice does no more than "mandate another interview ('interrogation') which could take hours if not days, [and] separates the married couple

into different rooms, where they are to be viciously interrogated." (Pl. Opp. at 8.) As discussed, however, the sole purpose of this interview is to help immigration officials determine whether a couple's marriage is bona fide or instead has been entered into for the purpose of evading the immigration laws. *Dinsey*, 2004 WL 1698630 at *1; *see Stokes*, 393 F. Supp. at 28-33. One can hardly call this a "consummation."

Based on the facts plead, the only conceivable final agency action that the Court could potentially review is a USCIS decision on Plaintiffs' adjustment of status application – i.e., on whether Madej Manchanda may remain in the United States as a permanent resident. Plaintiffs do not allege that such a determination has been made.

Accordingly, the Court lacks subject matter jurisdiction to hear Plaintiffs' "arbitrary and capricious" claim, and it should be dismissed without prejudice.

Additionally, Plaintiffs allege that their adjustment of status application "has been pending with Defendants beyond the reasonable time required ... to conclude it." (Compl. ¶ 122.) Defendants therefore allegedly have violated the APA's requirement that an agency conclude a matter "within a reasonable time," 5 U.S.C. § 555(b), and the Court may compel "agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). (Compl. ¶¶ 123-125.)

The Second Circuit has instructed that "[i]n determining reasonableness, we look to the source of delay – e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. Commodity Futures Trading Commission*, 191 F.3d 109, 120 (2d Cir. 1999). In addition, courts in this District often apply a six-factor test set forth in *Telecommunications Research and Action Center v. Federal Communications Commission*, 750 F.2d 70, 80 (D.C. Cir.

22

1984).  *See, e.g.*, *Baisheng Chen v. Wolf*, No. 19-CV-9951, 2020 WL 6825681, at *4 (S.D.N.Y. Nov. 20, 2020); *Ying Yu Liu v. Wolf*, No. 19-CV-410, 2020 WL 2836426, at *7 (S.D.N.Y. May 30, 2020).  The facts of this case, however, do not call for such nuanced analysis.

According to the facts as plead, Plaintiffs' adjustment of status interview took place on February 13, 2020, and Plaintiffs' Stokes Interview was scheduled to take place on May 12, 2020.  Plaintiffs filed the operative Complaint alleging unreasonable delay on June 15, 2020, only a month or so after the last alleged agency action.  Thus, there is no indication that a decision on Plaintiffs' adjustment of status application is being unreasonably delayed.  To the contrary, "the Complaint shows that rather than delaying, USCIS is processing Plaintiffs' application by attempting to conduct a Stokes [I]nterview, which Plaintiffs are resisting."  (Def. Mem. at 20 n.7.)

Plaintiffs also fail to allege sufficient facts to support their claim.  The Complaint does not state when Plaintiffs initially filed their adjustment of status application.[18]  This makes it impossible for the Court to determine how much time has passed since then – i.e., whether there has been a delay and, if so, whether the delay is reasonable as a matter of law.

Accordingly, Plaintiffs' "unreasonably delayed" claim also should be dismissed without prejudice.

**F.    Plaintiffs Have Not Identified or Served Does 1-5**

Since filing the Complaint on June 15, 2020, Plaintiffs have made no effort to identify or serve Defendants Does 1-5.  Accordingly, the Court recommends that

---

[18] In their opposition brief, Plaintiffs claim that they filed their application "[a]fter their marriage" – which is of no help to the Court.  (Pl. Opp. at 3.)

Plaintiffs' claims against Does 1-5 be dismissed without prejudice.  *See Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) ("[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, … the plaintiff simply cannot continue to maintain a suit against the John Doe defendant" (alterations in original) (internal quotation marks omitted)).

## Conclusion

For the foregoing reasons, I recommend that Plaintiffs' 42 U.S.C. § 1983, 42 U.S.C. § 2000e-1(e), and *Bivens* claims be DISMISSED with prejudice; that Plaintiffs' FTCA and APA claims be DISMISSED without prejudice; and that any and all claims against Does 1-5 be DISMISSED without prejudice.

## Procedures for Filing Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable George B. Daniels, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, NY 10007.  **FAILURE TO FILE TIMELY OBJECTIONS WILL RESULT IN WAIVER OF OBJECTIONS AND PRECLUDE APPELLATE REVIEW.**

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

24

Dated:  February 23, 2021
        New York, New York

Copies transmitted this date to all counsel of record.  The Clerk's Office is directed to mail a copy of this Report and Recommendation to Plaintiff pro se and note service on the docket:

Rahul Dev Manchanda
Manchanda Law Office PLLC
30 Wall Street
8th Floor
Suite 8207
New York, NY 10005