UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK
------------------------------------------------------------------------x

RAHUL D. MANCHANDA and SYLWIA EWELINA
MADEJ MANCHANDA,

                              Plaintiff(s),

    -against-

ANDREA LEWIS, SUSAN QUINTANA, U.S.
CITIZENSHIP AND IMMIGRATION SERVICES, and
DOES 1-5,

                            Defendant(s).

------------------------------------------------------------------------x

Civ Action No.

20-CV-1173-GBD-LDW

PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE GRANTING DEFENDANTS' MOTION TO DISMISS

**FAZZIO LAW OFFICES**

By: */s/ John P. Fazzio, Esq.*
JOHN P. FAZZIO, ESQ.
305 Broadway
7th Floor, Suite 19
New York, NY 10007
Phone: (201) 529-8024
Fax: (201) 529-8011
Email: jfazzio@fazziolaw.com
*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT …………………………………...……………………… 1

BACKGROUND AND PROCEDURAL HISTORY .…………………………………….. 1

STANDARD OF REVIEW …………………………………………………..………… 9

ARGUMENT AND OBJECTIONS ...…………………………………………………… 10

I.   Plaintiffs Have Exhausted Their Administrative Remedies Pursuant to 28 U.S.C. §§ 1346, 2671-2680 of the Federal Tort Claims Act and Have Pled a Valid *Prima Facie* Claim for the Tort of "Abuse of Process" Against USCIS ………………………..……….. 10

    a.   Exhaustion of Remedies May Be Excused Under the Principle of "Prudential Exhaustion," Bias and Prejudgment ……………………………………………...11

    b.   Plaintiffs Have Filed a Proper Administrative Claim and Have Pled a Valid Claim for the Tort of "Abuse of Process" Under New York Law ……………………..….. 13

II.   Plaintiffs Have Exhausted Their Administrative Remedies Pursuant to 28 U.S.C. §§ 1346, 2671-2680 of the Federal Tort Claims Act and Have Pled a Valid Claim Under the Administrative Procedures Act Against USCIS ………………………………………. 15

CONCLUSION …………………………………………………………………………… 18

## TABLE OF AUTHORITIES

**Page[s]**

Aurechoione v. Schoolman Transportation System, Inc.,
426 F.3d 635, 638 (2d Cir. 2005) ................................................................................................ 9

Bennett v. Spear,
520 U.S. 154 (1997) ................................................................................................ 16, 18

Berry v. Kerik,
366 F.3d 85, 87 (2d Cir. 2004) ................................................................................................ 10

Board of Education v. Farmingdale Classroom Teachers Asso.,
38 N.Y.2d 397, 403 (N.Y. 1975) ................................................................................................ 13

Brown v. Astrue,
649 F. 3d 193, 195 (3d Cir. 2011) ................................................................................................ 9

Dinsio v. F.B.I.,
445 F. Supp. 2d 305, 309 (W.D.N.Y. 2006) ................................................................................................ 10

Lassic v. Hudson River Health Care, Inc.,
No. 13 CV 2547 (RPP), 2013 U.S. Dist. LEXIS 106466 (S.D.N.Y. July 29, 2013) ................................ 12

Makarova v. United States,
201 F.3d 110, 113 (2d Cir.2000) ................................................................................................ 12

McCarthy v. Madigan,
503 U.S. 140, 146-49 (10th Cir. 1992) ................................................................................................ 12

Morrison v. National Australia Bank Ltd.,
547 F.3d 167, 170 (2d Cir. 2008) ................................................................................................ 9

Newton v. City of New York,
566 F. Supp. 2d 256, 274 and 280 (S.D.N.Y. 2009) ................................................................................................ 7

Smith v. Berryhill,
139 S. Ct. 1765, 1775-76 (2019) ................................................................................................ 16

Stokes v. United States, Immigration & Nat. Serv.,
393 F. Supp. 24 (S.D.N.Y. 1975) ................................................................................................ 4, 5, 13

Townsend v. Armstrong,
67 Fed. Appx. 47, 49 (2d Cir. 2003) ................................................................................................ 11

United States v. One Parcel of Real Prop.,
73 F.3d 1057, 1060 (10th Cir. 1996) ................................................................................................ 9

Weinberger v. Salfi,
422 U.S. 749, 765 (1975) ................................................................................................ 10

Williams v. Williams,
23 NY2d 592, 596 (N.Y. 1969) …........................................................................... 13

**STATUTES**

5 U.S.C. Ch. 5.................................................................................................................. 1

28 C.F.R. § 14.2 .......................................................................................................... 13

28 U.S.C. § 636(b)(1) ................................................................................................... 9

28 U.S.C. §§ 1346, 2671-2680 ......................................................................... 1, 10, 15

28 U.S.C. § 2675(a) ......................................................................................... 4, 12, 14

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 7

Fed. R. Civ. P. 72(b)(3) ................................................................................................ 9

**PRELIMINARY STATEMENT**

Plaintiffs, Rahul D. Manchanda and Sylwia Ewelina Madej Manchanda (collectively, "Plaintiffs") respectfully submit these objections to the Report and Recommendation of the Magistrate Judge granting Defendants' Motion to Dismiss. R&R (Dkt. No. 46).

The Magistrate Judge's Report and Recommendation, ECF No. 46 erroneously concludes that Plaintiffs have not exhausted their administrative remedies to be able to bring a Federal Tort Claims Act ("FTCA") claim pursuant to 28 U.S.C. §§ 1346, 2671-2680. Moreover, the Report erroneously concludes that Plaintiff's Administrative Procedure Act ("APA") claims pursuant to 5 U.S.C. Ch. 5 fails because Plaintiffs have alleged that final agency action by USCIS has occurred or that it was unreasonable delayed such that irreparable injury would result if the case were not adjudicated on the merits.

**BACKGROUND AND PROCEDURAL HISTORY**

This case concerns the marriage of Rahul D. Manchanda and Sylwia Ewelina Madej Manchanda, a U.S. citizen and a Polish national at a wedding in New York City with hundreds of family and friends present as guests. From this marriage, Rahul D. Manchanda and Sylwia Ewelina Madej Manchanda gave birth to a beautiful and healthy son, Gabriel Manchanda, who is now approximately two (2) years old.

Subsequent to Rahul D. Manchanda and Sylwia Ewelina Madej Manchanda's valid marriage, they filed an I-130 Alien Relative Petition and an I-485 Adjustment of Status application to allow Sylwia Ewelina Madei Manchanda to become a permanent resident of the United States, with Rahul D. Manchanda as Mrs. Sylwia Ewelina Madej Manchanda's sponsor.

In support of these objections, Plaintiffs rely upon the following evidence to prove that they exhausted the available administrative remedies before filing suit: (1) Standard Form 95

Claim for Damages, Exhibit A; (2) 2/21 Acknowledgment of Claim by DHS, Exhibit B; (3) 2/13 Claim for Abuse of Process, Exhibit C; (4) I-290B Appeal of Adjustment of Status Decision and FINAL DENIAL, Exhibit D; (5) New York Times Article discussing Stokes Interviews, Exhibit E; (6) Letters to Congressional Representatives, Exhibit F; and (7) Letters to Additional Elected Officials, Exhibit G; (8) Letter from Dr. Cassius, Exhibit H; (9) Stokes Interview Initiation Decisions, Exhibit I; and (10) EOIR-29 Notice of Appeal to the Board of Immigration Appeals Due to Lack of Jurisdiction, Exhibit J.

## FACTS

On February 13, 2020, Plaintiffs and their infant son appeared at USCIS's New York City Field Office for a "marriage adjustment of status interview." (Compl. ¶¶ 34-47.)[1].  The interview was conducted by Immigration Services Officer ("ISO") Andrea Lewis under the direction and supervision of Director Susan Quintana who is in charge of the New York City Field Office for USCIS. *Id.*  Plaintiffs were the last to be interviewed in a room of hundreds of people. (Compl. ¶¶ 35, 37.). Various DHS/USCIS Officers mocked and ridiculed Plaintiffs while they waited, indicating that they had advanced knowledge that the case had been prejudged and ISO Lewis intended to deny Plaintiffs' application. (Compl. ¶ 38.). During the interview itself, Lewis allegedly disparaged Mrs. Manchanda, insinuated the marriage was entered into for fraudulent purposes, and questioned the bona fides of the marriage. (2/13 Claim at 2).  Allegedly Lewis went far beyond the scope of the adjustment of status interview, made disparaging remarks about Mr. Manchanda and his profession as a leading New York City immigration lawyer of 20-years who regularly appears on [various television news outlets]. (Compl. ¶¶ 39-40; 2/13 Claim at 2).  Despite providing significant supporting documentation backing up the *bona fides* of the marriage, ISO

---

[1] "Compl." Refers to Plaintiffs' Amended Complaint (Dkt. 32).

Lewis spent the bulk of the interview issuing insulting and derogatory statements of opinion that caused Mrs. Manchanda to start crying. (2/13 Claim at 2).

The Manchandas took a number of steps to make a written complaint to USCIS subsequent to the February 13, 2020 incident, which constituted "abuse of process" and qualifies for adjudication under the FTCA.  First, on February 13, 2020 (referred to in R&R and herein as "2/13 Claim"), the Manchandas immediately sent a formal complaint via e-mail to the Civil Rights and Civil Liberties ("CRCL") section of the Department of Homeland Security, U.S. Department of Justice ("DOJ") and the Office of the Inspector General ("OIG"). (R&R (Dkt. No. 46), Pg. 19; Pl. Opp. At 15; Exhibit C hereto).  On February 21, 2020 the CRCL sent Mr. Manchanda an electronic message indicating receipt of the complaint on February 14, 2020 and initiated Complaint No. 20-05-USCIS-0393. ("Notice of Complaint," *see* R&R (Dkt. No. 46), Pg. 19; Pl. Opp. At 15; attached as Exhibit B hereto).  ISO Officer Lewis knew about the electronically filed complaint and retaliated against Plaintiffs by setting the I-130/I-485 adjustment of status and petition for relative case down for a Stokes Hearing. (Compl. ¶ 50). Among other things, the Notice of Complaint recognized that CRCL reviews complaints concerning "abuses of civil rights, civil liberties and profiling on the basis of race, ethnicity, or religion, by employees and officials of DHS." *Id.*  The notice advised that the complaint "will be processed by CRCL … [by sending] your complaint to the DHS Office of the Inspector General (OIG) for review." *Id.*  The Notice of Complaint indicates that the complaint would either be returned, or an investigation opened, and that the Manchandas would be notified of the outcome. *Id.*  No further written notification was ever received in regard to the Manchandas complaint as of the date of this writing over one-year later.

As related in the R&R (Dkt. No. 46), Pg. 20, *citing to* Dkt. 11-1, the only information ever received by the Manchandas was a March 26, 2020 telephone call from Ms. Keels, a DHS Civil

Rights Officer, to indicate that appropriate action was being taken against ISO Lewis and to "please accept her apology on behalf of the US Government."  The Manchandas took this as a "final denial" or "final disposition" under 28 U.S.C. § 2675(a) as no written notification of any agency action was mentioned and Defendant, United States Government has not provided any evidence to the contrary.  While the communication was not sent "in writing and … by certified or registered mail" under 28 U.S.C. § 2675(a) as Magistrate Judge Lehrburger notes, if all an agency needs to do is fail to process a complaint for over a year and neglect to send a written notice of the outcome to avoid judicial review, this would all but render the FTCA and APA toothless and would completely foreclose due process for those harmed by the tortious conduct of the United States Government.  There was eventually a final written denial of Plaintiffs I290B Appeal to AAO, which is the only formal administrative process set up for violations occurring in an I-130 Alien Relative Petition and an I-485 Adjustment of Status application. See Exhibit D.

On February 14, 2020, the very day after the adjustment of status interview, Field Office Director Susan Quintana provided notice to Mr. and Mrs. Manchanda that a "Stokes Interview" would be held on 5/12/20.  See Exhibit I.

It is important to briefly discuss and put into context what a "Stokes Interview" is and where it comes from.  The "Stokes Interview" gets its name from a case in this District and is a second chance for a couple to prove the *bona fides* of their marriage when USCIS suspects the marriage to be fraudulent. See *Stokes v. United States, Immigration & Nat. Serv.*, 393 F. Supp. 24 (S.D.N.Y. 1975) (hereinafter "*Stokes*").  Fittingly, the dispute in *Stokes* mirrors the abuses and arguments at play in this very proceeding.  There, the Government contended that the same District Court in which Your Honor sits lacked subject matter jurisdiction to hear such a constitutional attack on the process exercised in an individual adjustment of status case because the plaintiffs

4

"failed to exhaust their administrative remedies"; and the plaintiffs argued they were attacking the constitutionality of the government procedure applied "which the Government insists must be exhausted." *Id.* at 28.  The Court noted that aliens in the United States have protected constitutional rights and "[b]oth the citizen-plaintiffs and their alien spouses have valuable rights at stake in this suit." *Id.* at 29.  Indeed, what could be more fundamental than the right to marry a partner of your choosing and to live and support your spouse and child in the country you call home?

*Stokes* involved humiliation, ridicule and disregard of rights very similar to those at play here; for example, 4th Amendment claims were made that ISO Officers illegally searched the Stokes's, asking them to empty their pockets and hand over the contents under duress that a failure to comply may jeopardize their application. *Id.* at 30.  *Stokes* also involved purported 5th Amendment and 6th Amendment violations wherein ISO Officers illegally attempted to coerce self-incriminating statements during the I-130 interview, similar to what happened to the Manchandas here. *Id.* at 30-31; see also R&R (Dkt. 46), Pg. 3; Compl. ¶¶ 39-40; 2/13 Claim at 2. On those constitutional grounds, this Court set the *Stokes* case down for trial, and a historic settlement ultimately resulted, part of which was the creation of the procedure for secondary review that exists to this day, and among other rights, the citizen and non-citizen seeking the adjustment of status gained the right to be represented by counsel.  Sadly, the Stokes Interview process, in practice, does not always live up to the noble and laudable principles of inherent individual rights this Court championed in giving birth to the Stokes Interview procedure.

The New York Times describes the Stokes Interview in practice as "a Kafkaesque version of 'The Newlywed Game,' with dire consequences" and acknowledges that the terrifying procedure of federal officers questioning couples in separate rooms, similar to a criminal interrogation, has been frequently depicted in Hollywood films such as "The Proposal" and "The

Green Card" due to the dramatic conflict it sets up.[2]  Dennis O'Hare's portrayal of ISO Officer Gilbertson and his cross-examination of Sandra Bullock and Ryan Reynolds in "The Proposal" was humorous, but the attempt here to vindictively and opportunistically cause harm to Mr. Manchanda by tearing his family apart and slandering his reputation at the same time, unjustly accusing him of fraud, is no laughing matter.  The stakes are real.  The implications are far-reaching, if not all-encompassing.  And, for a 20-year practitioner in the immigration field, the message of malicious intent, retaliation and personal animosity being sent, is unmistakable and palpable.

While we did not have time to compile comprehensive statistical evidence in preparing these objections, it is important to put into perspective just how rare a Stokes Interview actually is and how humiliating it is for a 20-year immigration lawyer who represents immigrants in these types of applications to be wrongly accused of fraud in this manner and to have his character impugned before the very tribunals in which he earns a living.  The New York Times reported that 506 of the 241,154 I-130 petitions filed by citizens in the last fiscal year [2009], or **two-tenths of 1 percent** raised concerns of fraud that required a Stokes Interview. *Id.*  For the Manchandas, who have lived together for 3 years and have a 2-year-old child together to have their application deemed presumptively fraudulent smacks of "abuse of process" and "retaliation" given the obvious targeting of the Manchandas' application for disparate treatment because he is an immigration lawyer who regularly stands as an adversary to the very same USCIS personnel on various types of contested applications in the same office and the courtroom upstairs on the 11th & 12th floors. Indeed, Plaintiffs have asserted that to set this application aside for a Stokes Interview based on

---

[2] Nina Bernstein, "Do You Take this Immigrant," NEW YORK TIMES, Jun. 11, 2010, at *available at* *https://www.nytimes.com/2010/06/13/nyregion/13fraud.html* (last viewed March 7, 2021), attached hereto as Exhibit E.

personal animosity and bad faith is *in and of itself* the complained of "abuse of process," not the adjustment of status determination.  Certainly, if the ultimate result of that application is a denial of adjustment, that may give rise to separate administrative claims and/or causes of action; however, even if the ultimate result is an approval, Plaintiffs have still suffered harm from the unwarranted government intrusion and distress from the additional and unwarranted investigation. In the context of malicious prosecution claims, the wrong complained of is the shame, emotional distress, and fear of being under the weight of governmental investigation and the subject of governmental disfavor and scrutiny, that an unwarranted investigation initiated on the basis of bad motives produces. New York claims for abuse of process are closely related and akin to malicious prosecution and the harms suffered are analogous.  See, e.g., *Newton v. City of New York*, 566 F. Supp. 2d 256, 274 and 280 (S.D.N.Y. 2009).

On March 1, 2020, Mr. Manchanda filed an Appeal to the Administrative Appeals Office ("AAO") of USCIS, utilizing Form I-290B on Case Docket MSC-199-061-5848 for Sylwia Ewelina, Manchanda under Alien No. [redacted], which was sent to the Office of Appeals, copying the Field Office Director of the NYC Field Office, Ms. Susan Quintana. See Exhibit D.  The AAO Appeal was summarily denied in a final denial letter (Exhibit D), and were it still active, which it is not, would nonetheless run afoul of the 6-month decision rule.

Importantly, on March 6, 2020, Plaintiffs filed a Standard Form 95 Claim for Damage, Injury or Death with the US Department of Homeland Security ("DHS") for $30,000,000 in damages resulting from the complained of abuse of process and infringement of constitutional rights caused by the tortious conduct of the United States Government. See R&R (Dkt. No. 46), Pg. 19, Pl. Opp. at 15, attached hereto as Exhibit A.  Plaintiffs also requested assistance from his congressional representatives NY Congressman Nadler and NYS Senator Gillibrand in trying to

get a definitive response to these claims. Exhibit F.  Still having no response by April 22, 2020, in an effort to leave no stone unturned, Plaintiffs sent additional requests for assistance to other elected representatives in Washington, D.C. Exhibit G.

Despite this exhaustive list of actions taken to take advantage of every possible available means for administrative review of Plaintiffs claims of abuse of process and infringement of constitutional rights caused by the tortious conduct of the United States Government, no written correspondence from USCIS, DHS, CRCL, OIG, Congress or elected officials was forthcoming advising of any recourse.  Instead, for over a year, Plaintiffs have been met with silence and inaction, which effectively constitute a denial of these claims, and with final denials of the only claims that were responded to in writing.  Mr. Manchanda and Mrs. Manchanda and their son Gabriel live under a cloud of uncertainty as to whether Mrs. Manchanda will receive a Green Card or whether their family will be ripped apart.  Mr. Manchanda is currently experiencing continuing harm as USCIS officials are retaliating against himself and his clients for making these allegations.

Throughout these proceedings, Mr. Manchanda has documented discrete events of "severe, relentless, and ongoing reprisals and retaliation" by USCIS officers, including Lewis & Quintana (Compl. ¶¶ 53-64, R&R, Pg. 3) which stem from the abuse of process documented in a proper administrative claim (2/13 Claim at 2 (acknowledged by USCIS in the 2/21 Letter), and March 6th Form 95 (Dkt. 36-1)).  Thus, Mr. Manchanda is experiencing continuous harm to his ability to earn a living as an immigration attorney and some of his clients are experiencing their own deprivation of due process rights flowing from the vendetta that USCIS has undertaken against Mr. Manchanda.  If Mr. Manchanda's extensive efforts to exhaust administrative remedies – the efforts of an experienced practicing attorney – do not pass muster, and if the administrative remedies

available cannot be navigated to this Court's satisfaction even by those who practice in this area of law, it is hard to discern, as a practical matter, who among us could meet this high bar.

## STANDARD OF REVIEW

This Court must review "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Brown v. Astrue*, 649 F. 3d 193, 195 (3d Cir. 2011) ("the standard district courts should apply to such objections is *de novo*."). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Moreover, an objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

When considering a Civil Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation marks omitted); *Aurechoione v. Schoolman Transportation System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence").

On the dismissal of Plaintiffs FTCA and APA claims, to which Plaintiffs object here, the basis for dismissal was "failure to exhaust administrative remedies." (R&R, (Dkt. 46), pg. 20 & pg. 23). The exhaustion doctrine exists to prevent premature interference with agency process, allowing agencies to function more efficiently as they correct their own mistakes, affording "the

parties and the courts the benefit of its experience and expertise," and providing "a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).  The exhaustion of administrative remedies doctrine is not meant to shut the courthouse door in the face of those who have valid claims that are ripe for adjudication on the merits.

Plaintiffs maintain that they properly exhausted all available administrative remedies with USCIS and they seek review by the District Judge of the Magistrate's determination in the R&R that their administrative remedies were *not* exhausted.  Arguably, even in a case where further agency review is possible, this does not necessarily mean that administrative remedies have not been exhausted for all practical purposes, particularly where constitutional wrongs are at the forefront, and the jurisdictional requirement of exhaustion of administrative remedies (as it has been interpreted in this Circuit) nonetheless may be excused for various reasons, including "constructive exhaustion" in the FOIA context. See, e.g., *Dinsio v. F.B.I.*, 445 F. Supp. 2d 305, 309 (W.D.N.Y. 2006) ("In the FOIA context, the exhaustion requirement is not jurisdictional, but is a jurisprudential doctrine that precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar.")

## ARGUMENT AND OBJECTIONS

I.    **Plaintiffs Have Exhausted Their Administrative Remedies Pursuant to 28 U.S.C. §§ 1346, 2671-2680 of the Federal Tort Claims Act and Have Pled a Valid *Prima Facie* Claim for the Tort of "Abuse of Process" Against USCIS.**

Plaintiffs have exhausted their administrative remedies pursuant to 28 U.S.C. §§ 1346, 2671-2680 of the Federal Tort Claims Act.  First and foremost, dismissal of an action for failure to exhaust administrative remedies ordinarily is ***without prejudice*** and Magistrate Lehrburger's recommendation so specifies. (R&R, (Dkt. No. 46) "Conclusion" Pg. 24). See, e.g., *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) ("As we have noted, 'failure to exhaust administrative remedies is

often a temporary, curable procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit. . .' In such circumstances, we have recognized that dismissal without prejudice is appropriate.") (citations omitted).  See also, e.g., *Townsend v. Armstrong*, 67 Fed. Appx. 47, 49 (2d Cir. 2003). Thus, it is worth noting that Judge Lehrburger recommends that Plaintiffs FTCA and APA claims be dismissed without prejudice and the lawsuit would simply need to be re-filed once the defect is cured and any further proof that administrative remedies have been exhausted is in hand. (R&R, (Dkt. No. 46) "Conclusion" at 24).

Such a dismissal is not warranted here and would be wasteful of judicial resources for the reasons outlined herein, which demonstrate that: (1) Plaintiffs' administrative remedies *have* been exhausted with USCIS; and (2) any further administrative decisionmaking should be excused due to concepts of "constructive exhaustion," "prudential exhaustion," "unreasonable delay," "futility," "the existence of redressable constitutional violations" and "irreparable harm."

### a. Exhaustion of Remedies May Be Excused Under the Principle of "Prudential Exhaustion," Bias and Prejudgment.

What can more clearly demonstrate "prudential" or "constructive" exhaustion than an immigration attorney who regularly practices before certain ISO agents suffering undue prejudice to his own application and to his livelihood, due to personal animosity against Mr. Manchanda held by those agents or based on bias, partiality and political disfavor against him?  Is not this kind of "trophy hunting" by federal officials the very paradigm of a due process violation and the exact situation the New York State tort for abuse of process exists to address?

Prudential or constructive exhaustion includes assertions of undue prejudice that may result from delays in awaiting an agency adjudication of an issue, contentions that the agency cannot

provide the relief requested, and arguments intimating bias, impartiality, or prejudgment on the part of the agency with the matter at issue. *McCarthy v. Madigan*, 503 U.S. 140, 146-49 (10th Cir. 1992), citing to *Smith v. Illinois Bell Telephone Co.*, 270 U. S. 587, 591-592 (1926) (claimant "is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief"), and stating pertinently:

> "Even where the administrative decision-making schedule is otherwise reasonable and definite, a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim. *Bowen v. City of New Yo*rk, 476 U. S. 467, 483 (1986) (disability benefit claimants "would be irreparably injured were the exhaustion requirement now enforced against them"); *Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U. S. 752, 773 (1947) ("impending irreparable injury flowing from delay incident to following the prescribed procedure" may contribute to finding that exhaustion is not required).

While 2nd Circuit and SDNY caselaw cited by Magistrate Lehrburger do hold that exhaustion of administrative remedies is jurisdictional, this is an intensely factual question that requires searching review.  Moreover, those prescriptions are not without limit, as aptly noted in the above excerpt from the 10th Circuit decision in *McCarthy v. Madigan* which cites some of the Supreme Court jurisprudence detailing the same exceptions to exhaustion of administrative remedies relied on by Plaintiffs in these objections – the existence of irreparable injury by awaiting further agency review, if any. See, e.g., *Lassic v. Hudson River Health Care, Inc.*, No. 13 Civ. 2547 (RPP), 2013 WL 3929633, at *2 (S.D.N.Y. July 29, 2013) ("[T]o establish that jurisdictional requirements have been met, Plaintiff must show that, prior to the initiation of the instant action, she exhausted her administrative remedies ***by filing a claim with [the relevant agency].***" (emphasis added, citing 28 U.S.C. § 2675(a); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (acknowledging that in a FTCA claim, "a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists")).  Moreover, administrative remedies cannot address a deprivation of constitutional rights infecting the very

process of review, which is presented by the case at bar, similar to the *Stokes* case. *Stokes v. United States, Immigration & Nat. Serv.,* 393 F. Supp. 24 (S.D.N.Y. 1975)

Once a claim is filed and responded to, whether or not such response is unilaterally characterized by the agency as "FINAL" and once Plaintiffs have shown that they received a final response and that further review is indefinite and uncertain and that further delay would result in irreparable injury or the infringement of constitutional rights, the burden should shift to Defendants to show either: (1) administrative review is *actually ongoing* and justifies the interruption of the lawsuit until finalized (as administrative review may either resolve or further clarify the issue); or (2) that the injuries claimed are susceptible to adequate due process through the agency's established procedures which have not yet been utilized.  Otherwise, those with valid claims would have the courthouse doors shuttered by a procedural prerequisite to proceeding with suit that is amorphous and which serves to compound the injuries sustained on a valid tort or administrative procedures claim rather than mitigating them, such that justice is not served.

### b. Plaintiffs Have Filed a Proper Administrative Claim and Have Pled a Valid Claim for the Tort of "Abuse of Process" Under New York Law.

In New York, "abuse of process" has three essential elements: (1) regularly issued process, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective. *Board of Education v. Farmingdale Classroom Teachers Asso.*, 38 N.Y.2d 397, 403 (N.Y. 1975). First, the process used must involve "an unlawful interference with one's person or property." *Williams v. Williams*, 23 NY2d 592, 596 (N.Y. 1969). The denial of proper review of an adjustment of status application (I-130 Alien Relative Petition and an I-485 Adjustment of Status application) is a regular process under which Plaintiffs are entitled to due process of law.  Second, the allegations in the Complaint clearly allege ridicule prior to the adjustment of status interview (Compl. ¶¶ 35-38, R&R, Pgs. 2-3) and disparate

treatment during the adjustment of status interview (Compl. ¶¶ 39-40, R&R, Pg. 3) together with discrete events of "severe, relentless, and ongoing reprisals and retaliation" by USCIS officers, including Lewis & Quintana (Compl. ¶¶ 53-64, R&R, Pg. 3) which were documented in a proper administrative claim (2/13 Claim at 2 (acknowledged by USCIS in the 2/21 Letter), and March 6th Form 95 (Dkt. 36-1)).  These administrative claims were discussed in greater detail in Pl. Opp. At 15.  Judge Lehrburger's conclusion that these administrative claims were not finally determined is as follows:

> "Assuming for the sake of argument that the 2/13 Claim was a proper administrative claim, nowhere in the Complaint or their opposition brief to Plaintiffs demonstrate that the 2/13 Claim was 'finally denied by the agency,' either 'in writing… sent by certified or registered mail' or by 'failure … to make [a] final disposition … within six months after [the claim was] filed.' 28 U.S.C. § 2675(a) … Moreover Plaintiffs do not explain whether the purported communication was sent to them 'in writing and … by certified or registered mail.' 28 U.S.C. § 2675(a)."

R&R, (Dkt. No. 46) at 19.

Here, Plaintiffs have submitted documentation demonstrating that they have exhausted their administrative remedies. By contrast, Defendants have not submitted countervailing proofs or declarations from officials at USCIS stating that a search of USCIS records revealed no record of any claim or that the claim is still outstanding.  The Magistrate cites to sections of 28 C.F.R. § 14.2 which require only a written notification of an incident and a claim for money damages, which are clearly present in this case. (See R&R (Dkt. No. 46) at 19, fn 15).  The Magistrate Judge's reliance in the section quoted above on a final denial in writing by certified mail is misplaced. (See R&R (Dkt. No. 46) at 20, *citing to* 28 U.S.C. § 2675(a).  Clearly, the evidence of record shows that Plaintiffs claims were recognized (Exhibit B) by CRCL by providing Complaint No. 20-05-USCIS-0393.  Nonetheless, no further action was taken by USCIS, DHS, or USCIS on the 2/13 Claim or the Standard Form 95 submitted for over a year, while Plaintiffs and their 2-year-old son

14

Gabriel have suffered emotionally, physically, mentally and financially as a result of the harm alleged. See Letter from Dr. Jeremy Cassius, PHD, Exhibit H.  Dr. Cassius recounts the *bona fides* of the marriage and shock at the denial of the requested adjustment of status by USCIS, explains that Mr. Manchanda had a serious heart attack in the past year, just before his son Gabriel was born, which have exacerbated the damage this incident has caused to Mr. Manchanda's family, his heart condition, his overall health and his livelihood. *Id.*

Given this evidence, this Court should overrule Magistrate Lehrburger's conclusion that Plaintiffs failed to show that they exhausted their administrative remedies; [that] the Court lacks subject matter jurisdiction to hear their FTCA claim; and [that] the claim should be dismissed without prejudice, and, accordingly, this Court is vested with subject matter jurisdiction over Plaintiff's FTCA claims which should proceed to trial. (See R&R (Dkt. No. 46) at 20).

## II. Plaintiffs Have Exhausted Their Administrative Remedies Pursuant to 28 U.S.C. §§ 1346, 2671-2680 of the Federal Tort Claims Act and Have Pled a Valid Claim Under the Administrative Procedures Act Against USCIS.

Magistrate Judge Lehrburger aptly sets forth the applicable legal standards under the APA:

> The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. §§ 702, 704.  "The reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 708(2)(A).  A court's "APA review is limited to [ ] final agency action." *Larson v. United States*, 888 F. 3d 578, 587 (2d Cir. 2018) . . . "this requirement of finality is jurisdictional." *Air Espana v. Brian*, 166 F. 3d 75, 87 (2d Cir. 2008).

R&R (Dkt. No. 46) at 21.

Magistrate Judge Lehrburger also clearly states Plaintiffs' position and their basis for the APA claim:

> Plaintiffs allege that "[h]ere, Defendants' actions that led to the required Stokes interview were arbitrary, capricious, and an abuse of discretion." (Pl. Opp. at 28). Specifically, "Plaintiffs and their infant baby were arbitrarily made to wait for the

> interview for a prolonged time, [and] humiliated, intimidated, discriminated, abused and insulted." (Compl. ¶ 117). Furthermore, "Defendant ISO Lewis issued a 'Stokes Interview Notice' without any specific reason[,] and to retaliate and reprise and harass Plaintiffs for filing a complaint with DHS and DOJ Civil Rights Divisions,' and 'without considering the statutorily required documents and evidence.' (Compl. ¶¶ 119-120).

R&R (Dkt. No. 46) at 21.

However, Magistrate Lehrburger errs in concluding that no reviewable "final agency action" has occurred when an I-485/I-130 adjustment of status and petition for relative interview ends in requiring a Stokes Interview.  Magistrate Judge Lerhburger questions whether such an action constitutes the "consummation' of the agency's decisionmaking process" or from which "legal consequences will flow." *Smith v. Berryhill*, 139 S. Ct. 1765, 1775-76 (2019) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1987)).  Magistrate Judge Lehrburger also insinuates that Plaintiffs "offer no response" in opposition to Defendants' argument that Plaintiffs rights are unaffected by the determination that a Stokes Interview is needed.  Nothing could be further from the truth.  The Magistrate errs in not giving proper consideration to what a Stokes Interview entails and how it is used in practice and to the direct consequences of being the subject of such an investigation.

As discussed above, the Stokes Interview is an intrusive government investigation premised on an agency conclusion that the application (and the marriage itself) is fraudulent. Given the consequences of such a determination, which sets up an intrusive investigation of suspected illegal conduct under oath before a federal agency, it is error to conclude that no "final determination" has been reached.

While there is no doubt that the APA does not permit a claimant to second guess agency action at each step in the administrative process, as discussed above, a Stokes Interview is a rare and intrusive and final investigative remedy reserved for cases of suspected fraud and abuse to the

immigration laws, after which one's spouse may be removed from the country and during which one's rights are in jeopardy to such a degree that they are entitled to representation by counsel.

A final decision on Plaintiffs' adjustment of status application – i.e., on whether Madej Manchanda may remain in the United States as a permanent resident is not the only determination on which relief for an abuse of discretion by USCIS is warranted.  Otherwise, retaliation and retributive or punitive selection of attorneys and other public figures for Stokes Interviews on a "trophy hunting" basis could be undertaken with impunity, regardless of the merits, and yet escape review if an order of removal and deportation did not result.  As with malicious prosecution, which requires proof of disposition in favor of the accused (i.e., no adverse final determination), the abusive wielding of government power is a wrong in and of itself, regardless of whether the government is successful in the ultimate abridgement of rights their delegated authority permits.

Where an agency like USCIS is involved, the evil which the APA guards against is the making of final determinations (*i.e.*, setting a routine case down for an intrusive investigation by allegedly biased individuals on the basis of a presumptive fraud) for purposes of "trophy hunting" or "retaliation" or "personal animosity."  When a clearly abusive final decision to impose punitive agency action[s] is involved in an individual case, justice should not be abandoned such that abusive conduct escapes review simply because there are further administrative steps before the ultimate harm will result.

There can be no question that a criminal defendant who is arrested without probable cause but nonetheless stands accused of a crime and has his liberty circumscribed through incarceration or supervision by the courts has not suffered constitutional harm.  In the same vein, requiring a married couple to be interrogated without basis and having them open up their lives to searching scrutiny for an improper purpose, with the threat of the family being torn apart through a

deportation hanging over the proceedings, is a decision of great magnitude that puts Plaintiffs in substantial jeopardy.

One could argue that the threat of incarceration pales in comparison to the threat of facing the Hobson's choice between being estranged from the mother of your child or leaving the country you call home permanently. If malicious initiation of criminal proceedings threatening conviction by the United States Government is reviewable, even where conviction and incarceration does not ultimately result, why then would malicious initiation of an immigration investigation threatening deportation by the United States Government not be reviewable, even where deportation has not yet and may never result? Initiating an investigation with substantial consequences is a final determination. It is the "consummation' of the agency's decision-making process" or from which "legal consequences will flow" which meets the definitional test announced in *Bennett v. Spear*, *supra*, 520 U.S. at 177-178. The right to an attorney provided in a Stokes Interview is a signal that "legal consequences will flow" from the outcome of the proceedings.

Given this evidence, this Court should overrule Magistrate Lehrburger's conclusion that Plaintiffs failed to show that they exhausted their administrative remedies; [that] the Court lacks subject matter jurisdiction to hear their APA "arbitrary and capricious" claim; and [that] the claim should be dismissed without prejudice, and, accordingly, this Court should find that it is vested with subject matter jurisdiction over Plaintiff's APA claims which should proceed to trial. (See R&R (Dkt. No. 46) at 20).

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully request that the Court reject the Report's findings and recommendations of dismissal of Plaintiffs' FTCA and APA claims and permit the same to proceed to trial.

18

Dated: March 8, 2021

<div style="margin-left:50%">

Respectfully submitted,

/s/ John P. Fazzio, Esq.
JOHN P. FAZZIO ESQ.
305 Broadway, 7th Floor
New York, NY 10007
Phone: (201) 529-8024
Fax: (201) 529-8011
Email: jfazzio@fazziolaw.com
*Attorneys for Plaintiffs*

</div>