UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK
------------------------------------------------------------------------x

RAHUL D. MANCHANDA and SYLWIA EWELINA
MADEJ MANCHANDA,

                                        Plaintiff(s),

         -against-

ANDREA    LEWIS,    SUSAN    QUINTANA,    U.S.
CITIZENSHIP  AND  IMMIGRATION  SERVICES,  and
DOES 1-5,

                                        Defendant(s).

------------------------------------------------------------------------x

Civ Action No.

20-CV-1173-GBD-LDW

REPLY TO DEFENDANT'S
RESPONSE TO PLAINTIFF'S
OBJECTIONS TO REPORT
AND RECOMMENDATION OF
MAGISTRATE    JUDGE
GRANTING DEFENDANTS'
MOTION TO DISMISS


**FAZZIO LAW OFFICES**

By: */s/ John P. Fazzio*
JOHN P. FAZZIO, ESQ.
305 Broadway
7th Floor, Suite 19
New York, NY 10007
Phone: (201) 529-8024
Fax: (201) 529-8011
Email: jfazzio@fazziolaw.com
*Attorney for Plaintiff*

i

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT …………………………………...……………………… 1

I.  Exhaustion of Remedies is <u>NOT</u> Required Where the Plaintiffs Complain of Agency Bias and Challenge the Validity of the Administrative Procedure Itself, Since An Administrative Remedy Cannot Adequately Address Such A Claim and Since Further Agency Review Would be Futile ……………………….…………………………….………..... 1

II.  Plaintiff's APA Claims are Actionable and the Court has Jurisdiction to Hear Plaintiffs' APA Case Because a Legal Wrong has been Pled and there is No Adequate Administrative Remedy Available to Redress the Harm Complained of by Plaintiffs …..……………..… 12

CONCLUSION …………………………………………………………………………… 17

## <u>TABLE OF AUTHORITIES</u>

**Page[s]**

### <u>CASES</u>

Air Espana v. Brien,
165 F.3d 148, 151-154 (2d. Cir. 1999) ................................................................... 13, 16

Artis v. Greenspan,
223 F. Supp. 2d 149, 154-55 (D.D.C. 2002) ............................................................... 2

Bastek v. Federal Crop Ins. Corp.,
145 F.3d 90 (2d Cir. 1998) ………….......................…..................................... 10

Ciba-Geigy Corp. v. Sidamon-Eristoff,
3 F.3d 40, 46 n.4 (2d Cir. 1993) …………...…………………………….............................. 11

Darby v. Cisneros,
509 U.S. 137, 153-54 (1993) …............................................................. 6, 8, 13, 15, 16

Ezratty v. Com. of Puerto Rico,
648 F.2d 770, 775 (1st Cir. 1981) …………………………………….......................... 2

Gilbert v. City of Cambridge,
932 F.2d 51, 61 (1st Cir. 1991) …………...………………………….......................... 2

Gonzalez v. O'Connell,
355 F.3d 1010 (7th Cir. 2004) ……………………………………………................................. 2

Howell v. INS,
72 F.3d 288, 293 (2d Cir. 1995) …………...…………………………….................... 11, 14, 16

Japan Whaling Ass'n v. Am. Cetacean Soc.,
478 U.S. 221, 229 n. 4, (1986) …............................................................... 13

Kennedy v. Empire Blue Cross and Blue Shield,
989 F.2d 588, 594 (2d Cir. 1993) …............................................................... 4

Kokotis v. U.S.P.S.,
223 F.3d 275, 278 (4th Cir. 2000) …............................................................... 11

Louisiana Philharmonic Orchestra v. INS,
44 F. Supp. 2d 800 (E.D. La. 1999) …………………………………………...……..… 15, 16

McCarthy v. Madigan,
503 U.S. 140, 146-49 (10th Cir. 1992) ………………………………..…....… 1, 2, 4, 5, 6, 9, 12, 16

Nethagani v. Mukasey,
532 F.3d 150, 154 (2d Cir. 2008) …………………………………..…………………… 13

Portela-Gonzalez v. Secretary of the Navy,

109 F.3d 74, 77 (1st Cir. 1997) ……………………………………………………………… 2

Pozdniakov v. INS,
354 F.3d 176 (2d Cir. 2003) ……………………………………...……………… 11

Ruiz v. Mukasey,
552 F.3d 269, 276 (2d Cir. 2009) ……………………………………………...…… 6, 14

SEC v. Stewart,
374 F. 3d 184 (2d Cir. 2004) ……………………………………………...………...… 10

Shalom Pentecostal Church v. Acting Sec'y USDHS,
783 F.3d 156 (3d Cir. 2015) ……………………………………………...…....… 15, 16

Sharkey v. Quarantillo,
541 F.3d 75, 90 (2d Cir. 2008) …………………………………………...……....… 4, 8, 9, 10, 15

Spencer Enters., Inc. v. United States,
345 F.3d 683 (9th Cir. 2003) …………………...……………………………...….…… 15, 16

Stokes v. United States, Immigration & Nat. Serv.,
393 F. Supp. 24 (S.D.N.Y. 1975) ……………………………...…………………… 5, 6, 9, 10, 16

Swirsky v. Nat'l Assoc. of Sec. Dealers,
124 F.3d 59, 63 (1st Cir. 1997) ……………………………………………………….... 2

**STATUTES**

5 U.S.C. § 702 ................................................................................................................ 13

5 U.S.C. § 704 ................................................................................................................ 13

8 U.S.C. § 1154(b) ........................................................................................................... 6

8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................................................ 6

28 U.S.C. § 2675(a) .............................................................................................. 5, 12, 14

**REGULATIONS**

8 C.F.R. § 1103.3(a)(1)(ii) ............................................................................................... 6

28 C.F.R. § 14.2(a) ......................................................................................................... 11

## CONGRESSIONAL LEGISLATIVE HISTORY

1 Annals of Congress: The Debates and Proceedings in the Congress of the United States 1118
(Washington DC: Gales & Seaton, 1834-56) (statement of Rep. James Madison) ......................... 8

## NEWS ARTICLES

Nina Bernstein, *Do You Take this Immigrant?*, NEW YORK TIMES, Jun. 11, 2010 ....................................4

Marcia Cramer, '*I was blindsided': How a routine immigration interview turned into an arrest,* BOSTON GLOBE, March 11, 2018 ………………………... ............................................................................ 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK
-----------------------------------------------------------------------x

RAHUL D. MANCHANDA and SYLWIA EWELINA
MADEJ MANCHANDA,

Plaintiff(s),

-against-

ANDREA LEWIS, SUSAN QUINTANA, U.S.
CITIZENSHIP AND IMMIGRATION SERVICES, and
DOES 1-5,

Defendant(s).

Civ Action No.

20-CV-1173-GBD-LDW

REPLY TO DEFENDANT'S
RESPONSE TO PLAINTIFF'S
OBJECTIONS TO REPORT
AND RECOMMENDATION OF
MAGISTRATE JUDGE
GRANTING DEFENDANTS'
MOTION TO DISMISS

-----------------------------------------------------------------------x

## PRELIMINARY STATEMENT

Plaintiffs, Rahul D. Manchanda and Sylwia Ewelina Madej Manchanda (collectively, "Plaintiffs") respectfully submit this Reply to Defendant's Response to Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge granting Defendants' Motion to Dismiss.

**I.     EXHAUSTION OF REMEDIES IS _NOT_ REQUIRED WHERE THE PLAINTIFFS COMPLAIN OF AGENCY BIAS AND CHALLENGE THE VALIDITY OF THE ADMINISTRATIVE PROCEDURE ITSELF, SINCE AN ADMINISTRATIVE REMEDY CANNOT ADEQUATELY ADDRESS SUCH A CLAIM AND SINCE FURTHER AGENCY REVIEW WOULD BE FUTILE.**

While exhaustion of administrative remedies is jurisdictional, there are well recognized exceptions to the exhaustion requirement that have been set down by the Supreme Court of the United States which apply to this case. *McCarthy v. Madigan*, 503 U.S. 140, 146-49 (10th Cir. 1992). In *McCarthy*, the Supreme Court recognized three distinct exceptions to exhaustion of administrative remedies: (1) prejudice to subsequent judicial review (*Id*. at 146-47); (2) inadequate administrative remedy (*Id*. at 140, 147); and (3) agency bias (*Id*. at 148). Agency bias implicates the 2nd and 3rd prongs of the *McCarthy* exception because the agency, being biased against the

claimant, is not able to grant effective relief and the agency bias or taint would infect further administrative review, rendering it futile. *McCarthy* at 146-48; see *Gonzalez v. O'Connell*, 355 F.3d 1010 (7th Cir. 2004)([in deportation setting] appealing to the BIA would have been "futile" because the BIA had "predetermined" the statutory issue and Plaintiff had "no reasonable prospect" of obtaining relief); *Artis v. Greenspan*, 223 F. Supp. 2d 149, 154-55 (D.D.C. 2002)("administrative bias [that] would render pursuit of an administrative review futile" exempts the claimant from the exhaustion requirement); *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997)(describing the *McCarthy* exceptions); *Swirsky v. Nat'l Assoc. of Sec. Dealers*, 124 F.3d 59, 63 (1st Cir. 1997)(stating that this criterion is met "when there are clear indicia of agency bias or taint"); *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991)(noting that the exception applies where agency review would be futile or "the hierarchs have made it quite plain that the relief in question will be denied"—precisely the type of prejudgment and "trophy hunting" pled in Compl. ¶¶ 39-40[1], and 2/13 Claim at 2); *Ezratty v. Com. of Puerto Rico*, 648 F.2d 770, 775 (1st Cir. 1981)("[n]ormally, in such circumstances, we would refuse to return the case to the agency," because "[t]o send the case back would seem unfair to the plaintiffs and might seem to condone the agency's violations of the law's procedural requirements.").

On February 13, 2020, Plaintiffs Rahul Manchanda and Madej Manchanda appeared with their son Gabriel at the USCIS's New York City Field Office for a "marriage adjustment of status interview." (Comp ¶¶ 34-47). The interview was conducted by Immigration Services Officer ("ISO") Andrea Lewis under the direction and supervision of Director Susan Quintana who is in charge of the New York City Field Office for USCIS. *Id*. Plaintiffs were the last to be interviewed

---

[1] "Compl." Refers to Plaintiffs' Amended Complaint (Dkt. 32).

in a room of hundreds of people. (Compl. ¶¶ 35, 37). Various DHS/USCIS Officers mocked and ridiculed Plaintiffs while they waited, indicating that they had advanced knowledge that the case had been prejudged and ISO Lewis intended to maliciously deny Plaintiffs' application. (Compl. ¶ 38). During the interview itself, Lewis disparaged Mrs. Manchanda, insinuated the marriage was entered into for fraudulent purposes, and questioned the *bona fides* of the marriage without basis. (2/13 Claim at 2).  Lewis made inappropriate disparaging remarks about Mr. Manchanda and his profession as a leading New York City immigration lawyer of 20-years who regularly appears on [various television news outlets]. (Compl. ¶¶ 39-40; 2/13 Claim at 2).   Despite providing significant supporting documentation backing up the *bona fides* of the marriage, ISO Lewis spent the bulk of the interview issuing insulting and derogatory statements of opinion that caused Mrs. Manchanda to start crying. (2/13 Claim at 2).  Immediately following the filing of the 2/13 Claim, which was first filed via e-mail that day, and which ISO Lewis and Director Quintana received, Plaintiffs were set down for a Stokes Interview on February 14, 2020—the very next day. (Compl. ¶¶ 50, 57, Compl. Exhibit B, Stokes Interview Notice).  From that date forward, USCIS began retaliating against Mr. Manchanda's clients' applications, including a succession of discrete events of "severe, relentless, and ongoing reprisals and retaliation" by USCIS officers, including Lewis & Quintana (Compl. ¶¶ 53-64, 65-68, R&R, Pg. 3) which stemmed directly from Mr. Manchanda making "the abuse of process" claim against them (2/13 Claim at 2 (acknowledged by USCIS in the 2/21 Letter), and March 6th Form 95 (Dkt. 36-1)).  Thus, Mr. Manchanda is experiencing continuous harm to his ability to earn a living as an immigration attorney and his innocent clients are experiencing their own deprivation of due process rights flowing from the vendetta that USCIS has undertaken against Mr. Manchanda.

In the Second Circuit, when agency bias is raised, the question turns to whether the pleadings allege disqualifying bias on the part of the agency in question, as they clearly and positively do here. *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (ERISA case) (noting that a plaintiff must make "clear and positive showing that pursuing available administrative remedies would be futile"); see Compl. ¶¶ 34-47.  In the R&R, Magistrate Judge Lehrburger repeatedly states that exhaustion of remedies is jurisdictional for Plaintiffs' FTCA and APA claims. R&R (Dkt. No. 46), Pg. 18 (citing 28 U.S.C. § 2675(a) and *McNeil*), Pg. 19 (improperly citing to *Agent Orange* and again to 28 U.S.C. § 2675(a)), Pg. 20 (citing to *Roberson v. Greater Hudson* and questioning finality of denial plead), Pg. 20 on APA (citing to 5 U.S.C. §§ 702, 704 and the need of "final agency action"), and Pg. 21 (citing to *Larson* and *Bennet v. Spear* and *Sharkey*).  Despite this repetition and the citation to numerous sources for the same proposition, as if to hammer the point home, the Magistrate Judge failed even once to recognize or address the *McCarthy* exceptions cited above or their clear application to the case at bar.  In the first full paragraph of Pg. 21 Magistrate Lehrburger recognized that Plaintiffs' entire claim was based on the "arbitrary, capricious [] abuse of discretion" that setting down a Stokes Interview constituted under the circumstances, which in and of itself demonstrates sufficient agency bias to exempt Plaintiffs from the exhaustion of remedies requirement altogether and allow the claims to proceed regardless of the Court's views of the exhaustion issue. R&R (Dkt. No. 46), Pg. 21.

As pointed out in Pg. 6 of the Plaintiff's Objections (Dkt. 48) only **two-tenths of 1 percent** or **2 in 10,000** applications result in a Stokes Interview.[2]  On information and belief, this is the first case that has ever been set down for a Stokes Interview where the parties have proof that they have

---

[2] Nina Bernstein, *Do You Take this Immigrant?,* NEW YORK TIMES, Jun. 11, 2010, *available at* https://www.nytimes.com/2010/06/13/nyregion/13fraud.html (last viewed March 7, 2021), attached as <u>Exhibit E</u> to Dkt. 48.

lived together as a couple for many years and have a 2-year-old son they are raising together. This would also be the first such case where one of the parties is a practicing immigration attorney regularly appearing before the same immigration officers that are overseeing the application. Indeed, one would expect that such officers, at a minimum, would recuse themselves, in order to shield the agency from the appearance of impropriety and so as not to provide an occasion and risk for disqualifying bias to taint the proceedings.

In connection with agency bias, the Supreme Court in *McCarthy* cited a Fifth Circuit decision for the proposition that "administrative procedures must 'not be used to harass or otherwise discourage those with legitimate claims.'" *Id*. at 148-49 (citing *Patsy v. Fla. Int'l Univ.*, 634 F.2d 900,912-13 (5th Cir. 1981), rev'd on other grounds sub noni. *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982)). In other words, the doors to the halls of justice should not be slammed shut to those who have been wronged simply to discourage or deter future claims against the government. Moreover, the retaliatory action toward Mr. Manchanda's clients' applications is precisely the kind of "closing of the ranks" that too often flows from an initial due process violation, but which judicial review serves to deter.

It is absolutely clear that the Southern District of New York has previously found—in the immigration context where I-130 adjustment of status applications are at play—that flaws or bias in the administrative process itself do not require exhaustion because both the 2nd and 3rd prongs of *McCarthy* are implicated. *Stokes v. United States, Immigration & Nat. Serv.*, 393 F. Supp. 24, 28 (S.D.N.Y. 1975)[3]. In *Stokes*, Judge Brieant stated, "the validity of the entire I-130 procedure

---

[3] The four cases cited by Magistrate Judge Lehrburger are inapposite as none address the exceptions to the exhaustion of administrative remedies under *McCarthy* which were raised by Plaintiff and none arise in the factual context of immigration proceedings or implicate a deprivation of constitutionally protected rights. In *McNeil v. United States*, 508 U.S. 106, 113 (1993) a prisoner filed an FTCA claim before administrative denial and without waiting six months under 28 U.S.C. § 2675(a)—but, no final agency action was pled and no exception to the exhaustion requirement was raised and the case did not implicate a deprivation of constitutionally protected rights in the immigration context. In *Celestine v. Mount Vernon Neighborhood Health Center*, 403 F.3d 76, 82 (2d Cir. 2005)

could not be challenged in the immigration proceedings. This Court fails to see how this administrative remedy can be considered adequate for purposes of the exhaustion rule. See *Finnerty v. Cowen*, 508 F.2d 979 (2d Cir. 1974)… This Court has subject matter jurisdiction **without regard to any claimed necessity to exhaust administrative proceedings.**" *Id*. (Emphasis added).  Judge Brieant also recognized that even if the administrative decision was favorable, it would not negate the harassment, bias or intimidation suffered: "[e]ven if immediate relative status was granted on administrative appeal, the cause of action for prior acts of INS officers would not be mooted. See *Plano v. Baker*, 504 F.2d 595 (2d Cir. 1974)."

The Second Circuit has recently determined that a district court may review the denial of an I-130 petition. See *Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009) (concluding that "Section 1252(a)(2)(B)(ii) [of Chapter 8 of the United States Code] . . .does not preclude judicial review of the denial of [an] I-130 petition pursuant to Section 1154(b) [of Chapter 8], and a district court may properly exercise jurisdiction over [such a] case"). Because 8 C.F.R. section 1103.3(a)(1)(ii) provides that "unfavorable decisions on applications, petitions, and other types of cases *may* be appealed," (emphasis added) there exists no statutorily imposed *duty*, *mandate,* or *requirement* that an aggrieved party suffering a legal wrong at the hands of USCIS first pursue the petition to the BIA before seeking judicial review.  There can be no doubt under *McCarthy* and *Darby, infra* and entrenched Second Circuit jurisprudence touching on and analyzing the adjustment of status

---

the 2nd Circuit examined the interplay of state court removal with exhaustion of remedies in the context of a malpractice action that happened to involve a federally funded healthcare facility making the U.S. Government a defendant, but the *McCarthy* exceptions to exhaustion were not implicated and constitutionally protected rights were not at play. In *In re Agent Orange Product Liability Litigation*, 818 F.2d 210, 214 (2d Cir. 1987) the case is totally inapposite as that case addressed the 2-year statute of limitations, not exhaustion of administrative remedies, and arose in context of a class action personal injury case where no constitutional deprivation of rights was at play. In *Roberson v. Greater Hudson Valley Family Health Center, Inc.*, No. 17-CV-7325, 2018 WL 2976024, at *3 & n.2 (S.D.N.Y. June 12, 2018) District Judge Roman cites to *Celestine, supra* for the proposition that exhaustion of administrative remedies "cannot be waived" but that case does not address the exceptions to the exhaustion requirement under *McCarthy* and is a patient vs. healthcare provider action that has no contextual significance to the category of wrongs implicated in this case where the deprivation of constitutionally protected rights are at issue.

process that an aggrieved party may file suit against USCIS without awaiting a denial of adjustment of status or appealing such determination, because the statutory framework does not make such decision or appeal of such decision "mandatory" for further judicial review.

Plaintiff is not arguing that USCIS made an improper decision on Plaintiffs' I-130 application by denying an adjustment of status, but that DHS/USCIS is guilty of perpetuating a legal wrong against them during the adjustment of status interview, as Defendants aptly recognize, when they cite the portion of Plaintiff's Objections [ECF No. 48 at 16] which explain why adverse action in the adjustment of status interview and ordering a *Stokes* interview for retaliatory purposes is itself unlawful agency action and inarguably constitutes the tort of "abuse of process":

> "As discussed above, the Stokes Interview is an intrusive government investigation premised on an agency conclusion that the application (and the marriage itself) is fraudulent. Given the consequences of such a determination, which sets up an intrusive investigation of suspected illegal conduct under oath before a federal agency, it is error to conclude that no "final determination" had been reached."

Stated otherwise, wrongly setting down a couple for a *Stokes* Interview is the functional equivalent of wrongly charging them with a crime[4]. No AUSA would argue that improperly charging an innocent man with a federal crime out of malice and putting him under the threat of federal conviction and incarceration does not deprive him of valuable constitutionally protected rights and circumscribe his liberty—simply because the innocent man has not yet been wrongfully convicted.

That would be a ridiculous argument that dehumanizes the individual and disrespects the natural rights of an immigrant which are jealously protected by the United States Constitution. The Bill of Rights clearly applies to immigrants and despite all the political jockeying around

---

[4] Marcia Cramer, '*I was blindsided': How a routine immigration interview turned into an arrest,* BOSTON GLOBE March 11, 2018 (last visited March 27, 2021), available at, https://www.bostonglobe.com/metro/2018/03/11/was-blindsided-how-routine-immigration-interview-turned-into-arrest/9LwpYaPNcqPgeLcJ4L7LGN/story.html (demonstrating how the adjustment of status process, which should be routine and celebratory, can quickly turn into a nightmare for those who are singled out for criminal treatment by USCIS, and can put a family into fear of being torn apart).

immigration that has been the subject of controversy in recent years by differing administrations, we can all agree that from the very founding of our nation, affording natural rights to immigrants as well as citizens was a noteworthy and celebrated feature of the United States Constitution. James Madison, then a member of the House of Representatives, argued in 1790 for a naturalization law that "should hold out as many inducements as possible for the worthy part of mankind to come and settle amongst us, and throw their fortunes into a common lot with ours." See 1 Annals of Congress: The Debates and Proceedings in the Congress of the United States 1118 (Washington DC: Gales & Seaton, 1834-56) (statement of Rep. James Madison).  Thus, in this country, immigrants have protected constitutional rights and due process protections that prevent them from being subject to wrongful deportation or governmental abuse of process through the artifice of administrative action infected with bias and undertaken with malice.

Exhaustion is required if explicitly mandated by Congress, but courts may relax this requirement where Congress is silent. *Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993). In *Sharkey v. Quarantillo*, 541 F.3d 75, 90 (2d Cir. 2008), the Second Circuit concluded that an individual who challenged USCIS' purported rescission of her lawful permanent resident status without complying with rescission procedures was not subject to any administrative exhaustion requirement. Citing the holding in *Darby*, the Second Circuit noted that **the government had "not pointed to any statute or regulation that expressly mandates exhaustion of her claims."** *Id*. (Emphasis added).  Neither have Defendants here.

In their Response, Defendants attack each of the "claims" filed by Plaintiffs in various ways, claiming "the only "claim" Plaintiffs have filed is the SF-95, ECF No. 48-1, which they filed on March 6, 2020, 6 days *after* they initiated the litigation" and note that the filed District Court Complaint was attached thereto. **Defs. Response, Pgs. 6-7**.   Defendants conveniently and

incorrectly ignore the 2/13 Claim.  Defendants then attempt to distinguish *McCarthy* by clamping

down on the fact that *McCarthy* arose in the *Bivens* context and was not an FTCA or APA case.

**Defs. Response, Pgs. 7**.  *McCarthy* <u>has</u> <u>been</u> applied in the Second Circuit to the FTCA and APA

in the cases cited above.  Defendants ignore cases like *Stokes*, *supra* and *Sharkey, supra* that look

at the statutes and regulations governing the USCIS process which are actually relevant to this

lawsuit and which held that exhaustion of administrative remedies is not required.

      While it is true that the PLSRA has been amended and changed since 1992 to statutorily

impose *mandatory* exhaustion requirements, the pertinent statutes and regulations which govern

the adjustment of status process under the USCIS regime <u>have not</u>, and recent cases like *Sharkey*

in this Circuit have recognized that there is no statutory or regulatory mandate to file any inter-

agency appeal before challenging these particular agency actions in a judicial forum under the

FTCA or APA, such that the Second Circuit's words in *Sharkey* are equally applicable here:

**"[Defendants have] "not pointed to any statute or regulation that expressly mandates**

**exhaustion of her claims."** *Sharkey v. Quarantillo*, 541 F.3d 75, 90 (2d Cir. 2008).

      Defendants' arguments are also misplaced because they ignore the constitutional "due

process" violations and deprivation of natural rights present when one complains they have not

received a fair USCIS status determination interview as a result of bias.  Defendants fail to

recognize that the 2nd Circuit and the Southern District of New York have taken up cases involving

due process violations, including 4th and 5th amendment violations[5], and have found jurisdiction

---

[5] See Compl. ¶¶ 73-74. Magistrate Judge Lehrburger claims that Plaintiffs' claims are novel or arising in a "new context" for *Bivens* purposes (R&R (Dkt. No 46), Pg. 15 – where Lehrbrger is essentially arguing that wrongful acts like handcuffing a man while executing a warrant or letting an employee suffer an asthma attack without providing an inhaler are *clear* instance of constitutional deprivation by a government agent but wrongfully deporting a woman and her child and estranging them permanently from the father, effectively widowing the woman and rendering the child fatherless, *is nothing*). The claims are not novel because there have been many reported decisions including *Stokes* and *Sharkey*, which while they are not *Bivens* cases, cover the same ground and provide relief in part because of the constitutional violations in the "administrative process" itself, which is the focal point of Plaintiffs' Complaint.  To the extent this is what the recommendation is saying, it is clearly and obviously wrong.

in cases like *Stokes* and *Sharkey*.  Moreover, in these cases the Court has carefully scrutinized the facts and considered the constitutional abuses present against the statutes and regulations that govern the administrative process, rather than perfunctorily resorting to dismissal in a reflexive and hyper-technical manner.  In *Sharkey*, the Court noted that an evidentiary hearing would ordinarily be needed for such a dismissal, and in the absence thereof, "general factual allegations" suffice to establish jurisdiction:

> "A district court has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction, but where, as here, the case is at the pleading stage and no evidentiary hearings have been held, "[i]n reviewing the grant of a motion to dismiss [under Rule 12(b)(1)] we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Merritt v. Shuttle, Inc.,* 245 F.3d 182, 186 (2d Cir.2001); see *Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations. . . may suffice [to establish jurisdiction], for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.")."

*Sharkey v. Quarantillo*, 541 F.3d 75, 90 (2d Cir. 2008).  In contrast, the Second Circuit has found a mandatory exhaustion requirement does exist where the regulation states that an administrative review procedure is a "prerequisite to seeking judicial review." *SEC v. Stewart*, 374 F. 3d 184 (2d Cir. 2004); see also *Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90 (2d Cir. 1998) (finding that

---

Nonetheless, the main thrust of this case deals with the tortious conduct and procedural failures by USCIS which are redressable under the FTCA & APA. The Magistrate Judge correctly identifies the gravamen of the claim—a constitutional violation (which is what *Bivens* claims exist to redress)—when he states, "At the broadest level of generality, Plaintiffs claim violation of their Fifth Amendment due process rights in the context of the adjustment of status process."  R&R (Dkt. 46) Pg. 16.  The Tort of "abuse of process" like "malicious prosecution" addresses agency action taken without probable cause and for improper motives, carried out with "malice" which is also unquestionably a violation of 5th Amendment due process rights, and therefore actionable as a *Bivens* claim, by its very nature.  A wrongful arrest without probable cause is the same thing as a wrongful *Stokes* determination being set down without probable cause.  Both subject the individual to the potential loss of important rights and circumscribe their liberty without due process of law while simultaneously leaving them in a state of jeopardy with the Sword of Damocles hanging over head.  The individual is pitted in a David and Goliath struggle, standing as they do, against the unlimited resources of the federal government.  Important cases like *Stokes* and *Sharkey* have deeply analyzed claimed abuses of the adjustment of status process, which is notoriously ripe for abuse.  The fact that there is an exception to exhausting administrative remedies in such cases under the rationale in *McCarthy* recognizes that if a crooked cop or corrupt jailer is the culpable party, appealing to the crooked cop or corrupt jailer is utterly futile, and the judicial forum is best suited to hear claims of improper agency action and of the violation of administrative procedures in such circumstances, circumstances where the administrative process itself is broken and any internal review flowing from that broken process is therefore inadequate.

the statute mandates exhaustion); *Ciba-Geigy Corp. v. Sidamon-Eristoff*, 3 F.3d 40, 46 n.4 (2d Cir. 1993) (mandatory exhaustion language in regulation).  However, these cases and lines of reasoning which support dismissal in other contexts have absolutely no applicability to the case before the Court and the immigration laws pertaining to adjustment of status which are at play.

The Second Circuit also has held, with reference to the applicable statutes and regulations at play here that, **with regard to the denial of an adjustment of status**, exhaustion is <u>only</u> <u>required</u> *once removal proceedings have begun*. *Howell v. INS*, 72 F.3d 288, 293 (2d Cir. 1995)(Emphasis added).  The Court based its holding on the regulation that allows an individual to renew an adjustment application in proceedings, finding that it was a mandatory exhaustion requirement. *Howell v. INS*, 72 F.3d 288 (2d Cir. 1995). But see *Pozdniakov v. INS*, 354 F.3d 176 (2d Cir. 2003) (requesting further briefing in APA case challenging denial of advance parole where there was no statutory or regulatory exhaustion requirement).

As discussed, and for the reasons set forth at length above, exhaustion of administrative remedies is not required in this case for Plaintiffs to prosecute their FTCA claims.  To the extent exhaustion were required, and as previously argued at length in the Objection, Plaintiffs exhausted their administrative remedies with USCIS as required by the FTCA and APA by filing the 2/13 Claim. Although a claim may be presented by means of a Form SF-95, "other written notification" will suffice, so long as it otherwise meets the FTCA's requirements. *Kokotis v. U.S.P.S.*, 223 F.3d 275, 278 (4th Cir. 2000); 28 C.F.R. § 14.2(a).  The 2/13 Claim was acknowledged on 2/21/20 ("Notice of Complaint," R&R (Dkt. No. 46), Pg. 19, Pl Opp. at 15, <u>Exhibit B</u>), but was denied on 2/27/20 based on the fact that a retaliatory 2/14/20 Stokes Interview notice was sent in response to the filing and acknowledgment of the 2/13/20 Claim by Plaintiffs.

While Plaintiffs' Form 95 was filed subsequent to bringing suit, Plaintiffs' Form 95 claims were duplicative of the 2/13 Claim filed pre-suit and the Form 95 claims have now gone unanswered for more than six (6) months after presentment without a final disposition being made by CLRC and USCIS. 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section").  This is exactly as would be expected in an instance where the agency procedure was maliciously wielded in a retaliatory, punitive manner against a party—a practicing immigration attorney before the same DHS/USCIS personnel—to whom the agency action was made arbitrarily, capriciously and in a biased manner due to "personal malice" and "trophy hunting" motives that are violative of both the governing administrative framework and of Plaintiffs' constitutional rights.

The February 14, 2020 Notice to Appear for a Stokes Interview (Exhibit I) constituted final agency action, to the extent final agency action is required, as a Stokes Interview is only required when an applicant is accused of and presumptively guilty of defrauding USCIS.

Plaintiff will be deemed to have exhausted administrative remedies where a deprivation of constitutional rights exists that infects the administrative process itself and leaves the agency unable to provide "adequate relief" due to bias, impartiality, or prejudgment. *McCarthy v. Madigan*, 503 U.S. 140, 146-49 (10th Cir. 1992), citing to *Smith v. Illinois Bell Telephone Co.*, 270 U. S. 587, 591-592 (1926).  This is not a close case.  It falls squarely under *McCarthy*.


[Rest of Page Intentionally Left Blank]

**II.    PLAINTIFF'S APA CLAIMS ARE ACTIONABLE AND THIS COURT HAS JURISDICTION TO HEAR PLAINTIFFS' APA CASE BECAUSE A LEGAL WRONG HAS BEEN PLED AND THERE IS NO ADEQUATE ADMINISTRATIVE REMEDY AVAILABLE TO REDRESS THE HARM COMPLAINED OF BY PLAINTIFFS.**

In general, there is a "'strong presumption in favor of judicial review of administrative action.'" *Nethagani v. Mukasey*, 532 F.3d 150, 154 (2d Cir. 2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 298 (2001)). The Administrative Procedure Act ("APA") is a check and balance against unlawful agency action.   The cause of action does *not* require "exhaustion of administrative remedies" before seeking judicial review but, *rather* requires that there "is no other adequate remedy [available]."  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (quoting 5 U.S.C. § 702). "[T]he `right of action' in such cases is expressly created by the [APA], which states that `final agency action for which there is no other adequate remedy in a court [is] subject to judicial review,' at the behest of `[a] person . . . adversely affected or aggrieved by agency action.'" *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 229 n. 4, (1986) (quoting 5 U.S.C. §§ 702, 704).

A plaintiff is clearly not required to exhaust non-mandatory administrative remedies. *Darby v. Cisneros*, 509 U.S. 137 (1993).  Outside the removal context—the APA often provides the statutory basis for challenges to many USCIS decisions, and Defendants have not pointed to any contrary caselaw or any applicable statute or regulation that mandates appeal of an adverse action in the adjustment of status process, and cannot, because there is none, making an APA claim in such a case valid and relatively common. Under the APA, "[c]ourts are not free to impose an exhaustion requirement unless the specific statutory scheme at issue imposes such a requirement."

*Air Espana v. Brien*, 165 F.3d 148, 151-154 (2d. Cir. 1999)[6]; see *Darby*, 509 U.S. at 154 (holding that under the APA, the doctrine of exhaustion applies "only when expressly required by statute or when an agency rule requires appeal before [judicial] review and the administrative action is made inoperative pending that review").

The Second Circuit also has held, with reference to the applicable statutes and regulations at play here that, **with regard to the denial of an adjustment of status**, exhaustion is only required *once removal proceedings have begun. Howell v. INS*, 72 F.3d 288, 293 (2d Cir. 1995)(Emphasis added). See also, discussion of *Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009) on Pg. 6 above, which did not involve an APA claim but followed the same reasoning as *Howell*. In short, when the agency in question is prejudiced against an aggrieved party, where the agency's mandatory procedures and processes have been utilized to no avail, and when an aggrieved party therefore has nowhere else to turn and any further complaints to the agency would necessarily be futile, they may turn to the courts and to judicial review for a remedy. The APA specifically exists to police agencies that violate their own procedures and regulations, that violate the constitutional rights of those appearing before them, or that commit other legal wrongs against the public.

The Defendants have not pointed to any statute or regulation that expressly mandates exhaustion of Plaintiffs' claims which are based on violations and abuses in the adjustment of

---

[6] Defendants miscite *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999) [Defendants' Response (Dkt. No. 49), Pg. 9] because the section relied upon merely stated that certain post-1993 APA claims were not ripe for review, while recognizing that other claims arising from a different statutory framework that did not contain an "exhaustion requirement" were ripe for review. Thus, *Air Espana* more strongly supports Plaintiffs' argument on these facts, since the adjustment of status process at issue inarguably *does not* contain a statutory or regulatory "exhaustion requirement" and thus falls in the category of claims *Air Espana* determined were ripe for judicial review. In *Air Espana*, the Second Circuit carefully parsed the regulations pertaining to carrier fines for immigration and customs activities and considered parallel jurisprudence under a similar statutory framework in the deportation context. *Id.* at 152-153. There, the Second Circuit remanded, stating, "On remand, we leave it to the district court to determine which fines were appealed administratively in a timely fashion and instruct the district court that, as to these claims, an order to the INS and/or the BIA to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), is the appropriate remedy." *Id.* at 153.

status process. See also, e.g., *Shalom Pentecostal Church v. Acting Sec'y USDHS*, 783 F.3d 156 (3d Cir. 2015) (APA challenge to denial of religious worker immigrant visa petition); *Spencer Enters., Inc. v. United States*, 345 F.3d 683 (9th Cir. 2003) (APA challenge to denial of immigrant investor visa petition); *Louisiana Philharmonic Orchestra v. INS*, 44 F. Supp. 2d 800 (E.D. La. 1999) (APA challenge to denial of H-1B specialty occupation visa petition).

Certainly, there is no greater "legal wrong" that can be suffered at the hands of an administrative agency than a mother and her child being wrongly denied an adjustment of status and being subject to deportation and estrangement from the father—the woman effectively being widowed, and the child effectively being rendered fatherless—because of a biased, vindictive and retaliatory agency decision.  Such a claim is subject to immediate judicial review and does not require that aggrieved parties first avail themselves of any particular optional or permissive administrative remedies, where such a remedy, if one exists (Defendants having pointed to none) are wholly inadequate to address the harms suffered due to the institutional bias at issue.

Because 8 C.F.R. section 1103.3(a)(1)(ii) provides that "unfavorable decisions on applications, petitions, and other types of cases *may* be appealed," there exists no statutorily imposed duty to pursue the petition to the BIA, and judicial review is now appropriate.

It is true that agency action is *generally* not reviewable until that action becomes "final," which, in the Second Circuit, is determined by the "core question" of "whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008).  Plaintiff has argued that the decision-making process was completed by a finding of fraud when the Stokes Interview was ordered on February 14, 2020. Moreover, where the APA applies, courts "are not free to impose an exhaustion requirement as a rule of judicial administration where the agency

action has already become 'final' under § [704]." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). There being no "exhaustion requirement" under the adjustment of status regime, and a Stokes Interview being a "final" decision or "charge" that the marriage is fraudulent which is not subject to adequate review by the agency itself (under *Stokes* and *McCarthy*), and as the Plaintiffs' rights are directly affected by this determination of fraud and charge of wrongdoing, and given that APA claims for adverse and arbitrary determinations in the adjustment of status process are ripe for review under the authorities cited above, the Magistrate Judge therefore erred in dismissing the Plaintiffs' APA claims on jurisdictional grounds.

Plaintiffs' APA claims are certainly actionable.  There is no adequate remedy available for the harms claimed.  The baseless charge of fraud giving rise to the Stokes Interview is the completion of the decision-making process, just as a charging decision by the United States Attorney's Office is a completion of the decision-making process or a charging decision by a District Attorney's Office is a completion of the decision-making process.  Once charges are filed, the office or agency involved has "made up its mind" about the defendant and any further appeal to the charging body is futile; the only recourse is to prove one's innocence by presenting its case in court.  Moreover, under the I-130 adjustment of status regime, neither the statutory framework nor the governing regulations impose any "exhaustion requirement."  Under *Darby*, *Air Espana*, *Howell* and *Shalom*, Plaintiffs submit that this court clearly has jurisdiction to hear Plaintiffs' APA claims and thus, they must be allowed to proceed.

[Rest of Page Intentionally Left Blank]

## CONCLUSION

For the reasons set forth therein, Plaintiffs respectfully request that the Court reject the Report's findings and recommendations and allow this case to proceed through discovery to a trial on the merits.

Dated: March 28, 2021

Respectfully submitted,

*/s/ John P. Fazzio*
JOHN P. FAZZIO ESQ.
305 Broadway, 7th Floor
New York, NY 10007
Phone: (201) 529-8024
Fax: (201) 529-8011
Email: jfazzio@fazziolaw.com
*Attorneys for Plaintiffs*